Larry CLAUDE, et al., Petitioners, Appellants,

v.

James R. COLLINS, Respondent,

Ray Sogard, et al., Respondents, Defendants,

Steve Saban, Respondent.

Nos. C0-93-564, C5-93-562.

Supreme Court of Minnesota.

June 30, 1994.

Roger J. Aronson, Rischmiller, Knippel & Aronson, Minneapolis, for appellants.

James J. Thomson, Jr., Holmes & Graven, Minneapolis, for James Collins.

Richard A. Beens, Lee A. Lastovich, Minneapolis, for Ray Sogard, et al.

Steve Saban, pro se.

Carla J. Heyl, League of Minnesota Cities, Shoreview, for amicus curiae.

## OPINION

PAGE, Justice.

This is an action brought under Minnesota's Open Meeting Law, Minn.Stat. § 471.-705, subd. 1 (1992). The Open Meeting Law requires public business be transacted in open meetings.[1] Subdivision 1a permits meetings to be closed for labor negotiations, provided public notice is given,[2] and subdivision 1d(e) permits meetings to be closed for discussions of matters within the attorney-client privilege. We are asked to decide whether the Open Meeting Law[3] constitutionally mandates removal of elected officials under the facts of this case.

In May 1992, four citizens of the City of Hibbing, appellants Larry Claude, George Galatz, and Ed Jylha ("citizens"),[4] commenced this action against members of the Hibbing City Council. The respondents are Mayor James R. Collins,[5] and city council members Ray Sogard, Frank Modich, and Steve Saban.[6] Claude and Jylha are the presidents of American Federation of State, County, and Municipal Employees union locals which represent Hibbing city employees. At the time of the acts complained of in the citizens' lawsuit, the city was locked in a

1. The Minn.Stat. § 471.705, subd. 1 (1992) reads, in part:

   Except as otherwise expressly provided by statute, all meetings, including executive sessions, of * * * the governing body of any * * * city, town, or other public body, and of any committee, subcommittee, board, department or commission thereof, shall be open to the public * * *.

2. Subdivision 1a also requires the meeting be tape-recorded.

3. Minn.Stat. § 471.705, subd. 2 (1992) provides that "[u]pon a third violation by the same person connected with the same governing body, such person shall forfeit any further right to serve on such public governing body or in any other capacity with such body for a period of time equal to the term of office such person was then serving."

4. Bill Magajna was also a plaintiff in the suit, but he is no longer a party.

5. The Mayor is also a member of the city council.

6. Two council members, Gene Nicollelli and Ray Pierce, were also named as defendants in the original complaint. They were dismissed from the suit after settling with the citizens.

labor dispute with its unions. In their lawsuit, the citizens claimed the council members violated the Open Meeting Law on at least six occasions, and demanded the council members be fined, removed from office, and required to pay the citizens' costs, disbursements, and attorney fees.

After a four-day trial, the trial court found five meetings of the city council violated the Open Meeting Law. The trial court further found Collins intentionally violated the Open Meeting Law five times; Sogard and Saban four times; and, Modich two times. The court imposed fines of $100 per violation and imposed attorney fees in the amount of $700 per violation on each of the council members. The trial court did not remove any of the council members from office. The court of appeals affirmed in part 507 N.W.2d 452 and we granted the citizens' petition for further review and also granted the request of the League of Minnesota Cities to serve and file a brief as amicus curiae.

James Collins has been the mayor of Hibbing since January 1, 1991. As mayor, he presides over council meetings and has the same voting power as the other council members. His history in city governance includes serving on the city council from 1973 to 1976, and again in 1989 and 1990, and as mayor in 1981 and 1982. He had a general familiarity with the Open Meeting Law in January of 1991. Collins attended training sessions from 1973 to 1976 with the League of Minnesota Cities and was aware of pamphlets available from the League of Minnesota Cities concerning issues such as the Open Meeting Law.

Steve Saban has served continuously on the city council since 1979. Saban learned of the Open Meeting Law during his time on the city council.

Ray Sogard was elected to the city council in November of 1990 and began his term of office on January 1, 1991. His position of City Clerk/Treasurer is the first elective position he has held. He currently works for a non-profit management company that manages housing projects for the elderly. Previously he worked for nine years as an administrative assistant for the Housing and Development Authority in Hibbing. Sogard claims he had "virtually" no knowledge of the Open Meeting Law prior to taking office. Sogard attended the League of Minnesota Cities orientation meeting in February of 1991 and attended the session providing an overview of the Open Meeting Law.

Frank Modich was elected to the city council in November of 1990 and began his term of office on January 1, 1991. Modich works full-time as a welder and had never held an elective office before being elected to the city council. Prior to taking office, he had no knowledge of the Open Meeting Law. In February of 1991, he attended an orientation session offered by the League of Minnesota Cities, but did not attend the course given on the Open Meeting Law. Modich testified he thought the city administrator ensured the requirements of the Open Meeting Law were followed.

The meetings the trial court found to be in violation of the Open Meeting Law took place between January 2 and April 5 of 1991. The first was a closed meeting called to consider strategy for labor negotiations. A secretary took notes of the meeting, but it was not tape-recorded. The trial court found the council discussed the following topics in "significant detail" at that meeting: (1) renegotiating the health insurance plan with the city's various union employees; (2) filling the city council vacancy in Ward D; (3) restructuring the Public Utilities Commission; (4) hiring a full-time city attorney; and (5) eliminating some standing city committees.[7] The trial court found that only the discussion related to renegotiating the health insurance plan was proper under the Open Meeting Law.

On February 7, 1991, the city council held another closed meeting to consider strategy for labor negotiations. Saban did not attend this meeting. As before, the meeting was not tape-recorded, but a secretary took notes. The trial court found two issues dis-

---

7. Concerning the standing committees, Collins stated at the meeting that "we are thinking of eliminating" a number of standing committees, and that the "good thing is that 2–3 councilors could be on one and not worry about the open meeting law."

cussed in significant detail: the proposed sale of a building to Minnesota Diversified, Inc. and the status of the city's negotiations with striking AFSCME employees. The trial court found the discussion of the building sale did not relate to labor negotiations. A reporter present at the beginning of the meeting was asked to leave because the discussion would be concerning labor negotiations.

On February 27, 1991, the city council held a meeting in the mayor's conference room after a regularly scheduled open meeting. All of the council members were present. The council members claimed the public was not expressly excluded from the meeting. The trial court, though, found the meeting to be in violation because no public notice of the meeting was given and no council members remembered any members of the public being present. This meeting was tape-recorded. The trial court found the following topics were discussed in detail: (1) privatizing the city's ambulance service; (2) restructuring the city's contribution to the proposed Northwest Airlines repair facility; (3) replacing retired fire fighters with volunteers; and (4) ensuring Collins' son would receive fair treatment when applying for city employment. The trial court found none of these matters related to labor negotiations.

On March 18, 1991, the city council held a closed meeting to consider strategy for labor negotiations. The entire council attended this meeting. The meeting was not tape-recorded. The trial court found the following matters were discussed in significant detail: (1) appointing Jeri Brysch to the position of City Director of Records and Finance; (2) consolidating the city's fire and police chief positions into one new position; and (3) privatizing the city's waste treatment plant. The trial court found none of these topics related to labor negotiations.

On April 5, 1991, another closed meeting was held to plan for labor negotiations. The entire council attended this meeting. At this meeting, which was not tape-recorded, the trial court found two topics were discussed in significant detail: (1) reducing involvement with the Drug Abuse Resistance Education program; and (2) privatizing the waste treat-ment plant. The court found neither topic related to labor negotiations.

In sum, the trial court found facts concerning the January 2, February 7, March 18, and April 5 meetings which established they were properly closed, but that discussion of improper subjects occurred at them. The trial court found the February 27 meeting was not properly closed because no public notice was given. The trial court also found labor negotiations were not discussed at the February 27 meeting.

In determining the number of intentional violations of each council member, the trial court considered their experience with and knowledge of the Open Meeting Law. Collins and Saban were held to have intentionally violated the law at each meeting they attended. The trial court noted their extensive experience in and knowledge of city government. The trial court did not hold Sogard responsible for the meeting which occurred the day after he assumed office, but held him to have engaged in intentional violations at the four other meetings because his knowledge of the law was demonstrated by his attendance at the League of Minnesota Cities' orientation meeting, his admission that he knew of the general requirements of the law, and his prior work in city government. Modich's complete lack of experience with the law led the trial court to find he intentionally violated the law only at the March and April meetings.

The court imposed a fine upon the council members of $100 per intentional violation, but refused to remove any of them from office because the court believed removal was a harsh remedy never previously imposed. The court noted the citizens of Hibbing could decide whether removal was warranted at the next council election.

The court of appeals affirmed the trial court, but recalculated the number of violations, holding Collins, Sogard, and Modich each committed five intentional violations of the law, and Saban committed four. The court approved of the trial court's decision to impose fines for only those violations it found were not committed in good faith. The court also affirmed the trial court's refusal to re-

move any of the council members from office. The court interpreted the Open Meeting Law in light of Article 8, Section 5 of the Minnesota Constitution, which requires a showing of malfeasance or nonfeasance before a public official may be removed. The court found the record revealed only "council members who carelessly failed to appropriately restrict their conversations during meetings that were properly closed for the purpose of discussing labor negotiations," and concluded the conduct did not amount to misfeasance or nonfeasance.

■ The Open Meeting Law mandates meetings of public bodies be open to the public. Minn.Stat. § 471.705, subd. 1 (1992). Meetings may be closed "to consider strategy for labor negotiations" and to discuss matters within the attorney-client privilege. Minn. Stat. § 471.705, subds. 1a, 1d(e). We have considered the Open Meeting Law in the past and have concluded it serves three vital purposes:

> (1) "to prohibit actions being taken at a secret meeting where it is impossible for the interested public to become fully informed concerning board decisions or to detect improper influences"; (2) "to assure the public's right to be informed"; and (3) "to afford the public an opportunity to present its views to the [public body]."

*St. Cloud Newspapers, Inc. v. District 742 Community Schs.*, 332 N.W.2d 1, 4 (Minn. 1983) (citations omitted). The statute is to be "construed in favor of public access[, and the] few exceptions that exist are to be carefully restrained to avoid abuse." *State by Archabal v. County of Hennepin*, 505 N.W.2d 294, 297 (Minn.1993) (citation omitted). In *Moberg v. Independent School District No. 281*, 336 N.W.2d 510, 518 (Minn. 1983), we approved of the trial court's definition that a "meeting" for the purposes of the Open Meeting Law occurs when at least a quorum of a governmental body intentionally meets to discuss the business of that body. *See also Willison v. Pine Point Experimental Sch.*, 464 N.W.2d 742, 745 (Minn.App. 1991) (holding that a penalty should be imposed under subdivision 2 of the Open Meeting Law where "the violation was intentional").

■ We agree with the court of appeals on the number of violations of the Open Meeting Law the council members committed, including those Modich committed at the January 2 and February 7 meetings and the violation Sogard committed at the January 2 meeting. Each council member intended to participate in every meeting he attended. At the four properly closed meetings, improper subjects were intentionally discussed, and the fifth meeting was improperly closed. The trial court erred in thinking it had discretion to take factors such as inexperience in office or ignorance of the law into account in determining whether a violation of Minn.Stat. § 471.705, subd. 1 occurred. As we noted in *St. Cloud Newspapers*, 332 N.W.2d at 8, good faith is not a defense to a violation of the Open Meeting Law.

With respect to the appropriate sanctions imposed for the violations, we find both the trial court and the court of appeals erred. Section 471.705, subd. 2, which details the penalties for violation of the Open Meeting Law, provides:

> *Any person who violates subdivision 1 shall be subject to personal liability in the form of a civil penalty in an amount not to exceed $100 for a single occurrence. An action to enforce this penalty may be brought by any person in any court of competent jurisdiction where the administrative office of the governing body is located. Upon a third violation by the same person connected with the same governing body, such person shall forfeit any further right to serve on such governing body or in any other capacity with such public body for a period of time equal to the term of office such person was then serving. The court determining the merits of any action in connection with any alleged third violation shall receive competent, relevant evidence in connection therewith and, upon finding as to the occurrence of a separate third violation, unrelated to the previous violations issue its order declaring the position vacant and notify the appointing authority or clerk of the governing body. As soon as practicable thereafter the appointing authority or the governing body*

shall fill the position as in the case of any other vacancy.

Minn.Stat. § 471.705, subd. 2 (emphasis added).

█ The Open Meeting Law clearly mandates a civil penalty not to exceed $100 for a single occurrence and removal from office for three separate and unrelated violations of the law. The amount of the civil penalty is discretionary, and a trial court may take good faith into consideration in determining the amount of the penalty. *St. Cloud Newspapers*, 332 N.W.2d at 8. The court of appeals correctly concluded that the trial court did not abuse its discretion in taking into account the council members' time and experience in office in determining the amount of the civil penalty.

█ With respect to the removal provision, the Open Meeting Law states that "[u]pon a third violation by the same person connected with the same governing body, such person *shall* forfeit any further right to serve on such governing body or in any other capacity with such public body for a period of time equal to the term of office such person was then serving." Minn.Stat. § 471.705, subd. 2 (emphasis added). In *Independent School District No. 561 v. Independent School District No. 35*, 284 Minn. 426, 436–37, 170 N.W.2d 433, 440 (1969) (citations omitted), we stated that "[w]hen used in statutes * * * the word 'shall' is generally imperative * * * 'unless a contrary intent appears.'" No such contrary intent appears in the Open Meeting Law. Once an official commits three separate, unrelated, and intentional violations, the statute mandates removal. The statute does not require, nor do any public policy considerations suggest, three separate adjudications. One adjudication of three separate, unrelated, and intentional violations is sufficient for removal under the statute.

█ Although Minn.Stat. § 471.705, subd. 2 may mandate removal, no statute can do what cannot be constitutionally done. Article 8, Section 5 of the Minnesota Constitution places limits on the removal of public officials. In particular, "[t]he legislature of this state may provide for the removal of inferior officers for malfeasance or nonfeasance in the performance of their duties." Minn. Const. art. 8, § 5. The Open Meeting Law does not explicitly recognize these constitutional limits, but they apply nonetheless. The court of appeals was correct in holding that any removal of a public official from office must be in conformity with our constitution.

█ To constitute malfeasance or nonfeasance, conduct must "affect[ ] the performance of official duties * * * [and] 'must relate to something of a substantial nature directly affecting the rights and interests of the public.'" *Jacobsen v. Nagel*, 255 Minn. 300, 304, 96 N.W.2d 569, 573 (1959) (citation omitted). In defining malfeasance, we have said that malfeasance "in an official capacity is not susceptible of an exact definition [but, it] 'has reference to evil conduct or an illegal deed, the doing of that which one ought not to do, the performance of an act by an officer in his official capacity that is wholly illegal and wrongful.'" *Id.* at 304, 96 N.W.2d at 573. The council members' actions here did not rise to the level of malfeasance.

█ We have described nonfeasance as the "'neglect or refusal, without sufficient excuse, to do that which is the officer's legal duty to do.'" *Id.* The Open Meeting Law creates a duty for public officials, with very limited exceptions, to hold meetings open to the public and to limit the subjects discussed in closed meetings. These council members' participation in closed meetings at which subjects of important public concern were discussed violated this duty. Discussing public issues of significance in closed meetings limited public knowledge and precluded public scrutiny and input, and thus impinged on the officials' proper performance of their duties. Therefore, unless there was sufficient excuse, the council members' participation in the closed meetings constituted nonfeasance.

Amicus curiae League of Minnesota Cities and the council members argue that if the officials act in good faith and without knowledge that they are violating the Open Meeting Law, their actions cannot constitute nonfeasance. The trial court found Sogard's inexperience as an elected official mitigated

his violation at the January 2 meeting and therefore did not count for purposes of the removal provision. Similarly, the trial court found Modich's inexperience mitigated his first two violations of the law.

We have affirmed the court of appeals in rejecting the claim that good faith nullifies violations under the Open Meeting Law. However, good faith is relevant to the constitutional issue of whether violations amount to nonfeasance. Ignorance alone, though, contrary to the council members' argument, does not amount to good faith or sufficient excuse. Ignorance due to inexperience may constitute good faith and amount to sufficient excuse where the elected official neither knows or has reason to know that he or she is violating the Open Meeting Law. To be sure, the excuse of inexperience very quickly wears thin. Public officials cannot long hide behind purported ignorance where that ignorance results in harm to the public. Public officials should not be permitted to frustrate the purposes of the Open Meeting Law, particularly when, as here, advice was available from the city administrator and city attorney which would have prevented the violations.

At the same time, elected officials must be allowed a reasonable period to learn their duties before they can be removed for failing to perform them. Our constitution places great value on the election of public officials. It does not permit the legislature to create a trap to snare the newcomer to office. Given Modich's inexperience, we do not consider his violations of January 2 and February 7 to be nonfeasance. For the constitutional removal of a public official under the Open Meeting Law, it must be established that three intentional, separate, and unrelated violations of the law occurred after the official had a reasonable amount of time to learn the responsibilities of the office. Thus, although Modich violated the law more than three times and under the statute is

subject to removal, the constitution prohibits that result.

Experienced elected officials such as Collins and Saban are presumed to know the subjects which could lawfully be discussed in closed meetings. So too should Sogard be presumed to understand the Open Meeting Law after having attended an orientation session on the subject. If an elected official is uncertain whether a particular subject may be discussed at a closed meeting, the official must either refrain from discussing it until the uncertainty is resolved, or postpone its discussion to an open meeting. The record reveals that at no time did any of the council members voice any concern over the Open Meeting Law, despite the wide array of subjects discussed in the meetings. Collins, Saban, and Sogard, each, without excuse, engaged in at least three separate, intentional, and unrelated violations of the Open Meeting Law. Their actions constituted nonfeasance and the Open Meeting Law requires their removal from office.[8]

We reverse and remand to the trial court for action consistent with this opinion.

---

8. The council members also challenge the constitutionality of subdivision 2 of the Open Meeting Law because it imposes forfeiture of office "for a period of time equal to the term of office such person was then serving." Minn.Stat. § 471.-705, subd. 2. Because the council members

have not been precluded from running for office at this time, we do not consider this issue. *See Lott v. Davidson,* 261 Minn. 130, 143, 109 N.W.2d 336, 345 (1961) (a person may not question the constitutionality of a law which does not affect him personally).