**MANKATO FREE PRESS CO., d/b/a The Free Press, Appellant,**

v.

**CITY OF NORTH MANKATO, et al., Respondents.**

No. C9–96–2277.

Court of Appeals of Minnesota.

May 13, 1997.

---

Mark R. Anfinson, Minneapolis, James H. Manahan, Manahan & Bluth Law Office, Chartered, Mankato, for Appellant.

Pierre N. Regnier, Shari L. Johnson, Jardine, Logan & O'Brien, P.L.L.P., St. Paul, for Respondents.

Carla J. Heyl, St. Paul, for amicus curiae League of Minnesota Cities.

Considered and decided by HUSPENI, P.J., and TOUSSAINT, C.J., and PARKER, J.

## OPINION

HUSPENI, Judge.

Appellant Mankato Free Press Co., d/b/a *The Free Press*, brought an action against respondents City of North Mankato and its council members, claiming that respondents violated portions of the Government Data Practices Act, Minn.Stat. § 13.43, subd. 3 (1996), and the Open Meeting Law, Minn. Stat. § 471.705, subd. 1 (1996). The district court granted respondents' motion for summary judgment. We reverse and remand.

## FACTS

Respondents hired a consultant to help select a new North Mankato city administrator. After meeting with applicants, the consultant narrowed the pool of applicants to 11. Debra Flemming, editor of *The Free Press*, met with North Mankato mayor Nancy Knutson and the North Mankato city attorney and requested that the names of the applicants be disclosed as soon as the city council decided to interview them. She also requested that any interviews be conducted publicly. Knutson told Flemming that the council would conduct one-on-one interviews that would not be open to the public.

The council held a special meeting on January 10, 1996, during which it reviewed the applications of the 11 candidates and selected five of the applicants to interview. The meeting was open to the public, but the council did not reveal the names of the applicants. After the meeting, a reporter for *The Free Press* requested the names of the five finalists. The council refused, saying the finalists' identities would be disclosed only after they agreed to be interviewed. The next morning the five candidates were contacted, and they all agreed to interview for the position. Their names were publicly announced later that day.

On January 27, 1996, the council members conducted simultaneous, serial one-on-one interviews of each of the five finalists so that each candidate was interviewed separately by each council member. The one-on-one interviews were not open to the public or the media. After the interviews, the council members ate lunch together but did not discuss the interviews. Following lunch, the council conducted public interviews. Knutson stated that she asked different questions at the public interviews than at the private interviews.

After the public interviews, the council members took a straw vote by writing on a piece of paper the names of their top two candidate choices. The result of the straw vote was not made public at the time, but it was included in the council meeting minutes, which were available at a later date. From the straw vote, three candidates remained, and the council members ranked these three. A motion was then made to hire the favored candidate, and a unanimous roll call was taken in favor of hiring the top candidate.

Appellant commenced this action, claiming that respondents violated the Government Data Practices Act and the Open Meeting Law. Appellant sought a declaratory judgment. Both sides moved for summary judgment, which the district court granted in favor of respondents on the three issues pertinent to this appeal.

## ISSUES

1. Did respondents violate the Government Data Practices Act by refusing to provide the names of the job finalists before the candidates had agreed to be interviewed?

2. Did respondents violate the Open Meeting Law by conducting serial one-on-one interviews with the job finalists?

3. Did respondents violate the Open Meeting Law by taking a written straw vote to narrow the field of candidates where the results of the straw vote were not made public until a later date?

## ANALYSIS

On appeal from summary judgment, this court asks whether there are any genuine issues of material fact and whether the district court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). The construction of a statute is a question of law and thus fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

## I.

■ Appellant claims that under the Government Data Practices Act, respondents were obligated to identify the names of applicants for the city administrator job when the city council decided to invite the applicants for interviews. The Government Data Practices Act attempts "to reconcile an individual's right of privacy with the public's right to be fully informed about government operations." *Demers v. City of Minneapolis*, 486 N.W.2d 828, 831 (Minn.App.1992). With respect to information collected about applicants for public employment, the statute provides:

[T]he following personnel data on current and former applicants for employment by a * * * political subdivision * * * is public: veteran status; relevant test scores; rank on eligible list; job history; education and training; and work availability. Names of applicants shall be private data except * * * *when applicants are considered by the appointing authority to be finalists for a position in public employment. For purposes of this subdivision, "finalist" means an individual who is selected to be interviewed by the appointing authority prior to selection.*

Minn.Stat. § 13.43, subd. 3 (1996) (emphasis added).

Respondents rely on the first sentence of the italicized language, which suggests that an appointing authority has discretion in deciding the time at which a candidate is a finalist. Appellant, on the other hand, highlights the next sentence, arguing that by defining "finalist" the legislature sought to limit a public body's discretion in deciding when a person becomes a finalist.

Both sides raise legitimate concerns in their arguments interpreting Minn.Stat. § 13.43, subd. 3. Respondents argue that many people, when applying for a position, do not want their present employer to know that they are considering seeking other employment. Respondents further contend that a hiring process may be lengthy and an applicant has a right to privacy if the applicant decides he or she is no longer interested in the position. Appellant argues that if public bodies are given too much authority to decide when a candidate is a finalist, they could evade the purpose of the statute by inventing various conditions that must be met before an individual is considered a finalist.

Because the italicized language has more than one reasonable interpretation, the statute presents an ambiguity and is subject to the rules of statutory construction. *See Tuma v. Commissioner of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986) (statute is ambiguous if it has more than one reasonable interpretation and court must apply rules of construction); *Waller v. Powers Dep't Store*, 343 N.W.2d 655, 657 (Minn.1984) (statutory

construction appropriate only when statute is ambiguous). The inclusion of the definition of finalist is a key consideration; it indicates that the triggering event that makes a name public is the *selection* of a candidate to be interviewed, not the candidate's acquiescence to the interview. To hold otherwise would give the candidate control over when his or her name is made public. The statute does not contemplate such a result.

The statute's legislative history supports our decision. The italicized language was added to the statute during the 1981 legislative session. 1981 Minn. Laws ch. 311, § 12. As originally introduced in the Senate, the amendment did not include the definition of "finalist." *See* 1 1981 Minn. Senate Journal 966. When the definition was added, it was initially worded so that a "finalist" was "an individual *who is interviewed* * * * ." *Id.* (emphasis added). Before being passed by the House, the definition was altered so that a "finalist" was "an individual who is *selected to be* interviewed * * * ." *See* 2 Minn. House Journal 3404 (emphasis added). The legislature's addition of the definition of "finalist" as well as the "selected to be" clause indicates an intent that the identities of finalists are to be made public when the appointing authority chooses them for interviews, not when the candidates agree to go forward with the interviews.

We recognize that the privacy concerns of applicants for public employment are at stake, but the statute and its legislative history suggest that the public's right to be informed outweighs an individual's privacy right in this context. We believe that the concerns raised by respondents can be addressed if the appointing authority advises candidates before they apply (or early in the selection process) that if they are selected to be interviewed they will be considered to be finalists under the statute and their names may be made public during the selection process. Respondents' failure to disclose the candidates' names violated statutory requirements. Therefore, we reverse the district court's decision on this issue.

## II.

■ Appellant next argues that respondents violated the Open Meeting Law by conducting serial one-on-one interviews. The law provides with few exceptions that

> all meetings, including executive sessions, of * * * the governing body of any * * * city * * * and of any committee, subcommittee, board, department or commissioner thereof, shall be open to the public * * *.

Minn.Stat. § 471.705, subd. 1 (1996). The purpose of the statute is to (1) prohibit secret meetings that make it impossible for the public to become fully informed, (2) assure the public's right to information, and (3) give the public an opportunity to express its views. *Claude v. Collins,* 518 N.W.2d 836, 841 (Minn.1994). The Open Meeting Law was enacted to benefit the public and must be construed in the public's favor. *See id.*

Although the statute does not define "meeting," the supreme court has held that meetings subject to the requirements of the Open Meeting Law are

> gatherings of a quorum or more members of the governing body, or a quorum of a committee, subcommittee, board, department, or commission thereof, at which members discuss, decide, or receive information as a group on issues relating to the official business of that governing body.

*Moberg v. Independent Sch. Dist. No. 281,* 336 N.W.2d 510, 518 (Minn.1983). Applying this rule, the district court reasoned that when the city council conducted the one-on-one interviews, there was never a "meeting" of a quorum of the council. The court concluded that the interview process "may have violated the spirit of the Open Meeting Law, but technically the procedure did not violate the written statute."

■ The district court also recognized that determining whether the Open Meeting Law was violated requires more than merely applying the "quorum rule," and cited the caution of the *Moberg* court that

> serial meetings in groups of less than a quorum for the purposes of avoiding public hearings or fashioning agreement on an issue may also be found to be a violation of the statute depending upon the facts of the individual case.

336 N.W.2d at 518. However, the district court, after finding that respondents' interview process may have violated the spirit of the Open Meeting Law, went on to find that the one-on-one interviewing procedure was not used "to avoid a public hearing or to fashion agreement on an issue." We conclude that in making this finding about the council members' reasons for using the one-on-one interviews, the district court decided a fact issue, which is appropriate only upon a trial on the merits. *See Vacura v. Haar's Equip., Inc.*, 364 N.W.2d 387, 391 (Minn. 1985) (noting that summary judgment is not intended as substitute for trial when there are genuine fact issues to be determined).

Arguably the effect of the one-on-one interviews is at odds with the purpose of the Open Meeting Law. The Open Meeting Law is intended to give the public access to "meetings at which information is received which may influence later decisions" of a public body as well as "matters which could foreseeably require final action" by a public body. *St. Cloud Newspapers, Inc. v. District 742 Community Schs.*, 332 N.W.2d 1, 6 (Minn.1983). Here, the council members undoubtedly garnered information during the one-on-one interviews that affected their votes about who to hire. Knutson admitted that she asked questions during the private interviews that she did not ask during the public interviews.

While the *effect* of respondents' interview process may have frustrated the purpose of the Open Meeting Law, *Moberg* recognizes a violation of the law only if the process was *designed* to avoid public hearings. *See* 336 N.W.2d at 518. Therefore, on remand the district court should make a proper factual inquiry to determine whether respondents' interviewing procedure was done with the purpose of avoiding public hearings or fashioning agreement on who to hire as city administrator.[1]

## III.

■ Appellant argues that respondents also violated the Open Meeting Law by taking a written straw vote to narrow the list of finalists during the January 27 meeting.[2] We agree. The results of the straw vote were not made public during the meeting, but were recorded in the meeting minutes, and were made available only at a later date.

The Open Meeting Law requires, with limited exceptions, that all city council meetings be open to the public. Minn.Stat. § 471.705, subd. 1. It further provides:

> The votes of the members of * * * such governing body * * * on any action taken in a meeting herein required to be open to the public shall be recorded in a journal kept for that purpose, and the journal shall be open to the public during all normal business hours where such records are kept.

*Id.* A city council meeting is not really "open" to the public if the council is conducting its voting in secret. *See* Op. Att'y Gen. 471e (Aug. 20, 1962) (interpreting Minn.Stat. § 471.705 as precluding secret ballots at city council meetings "[u]nless a secret ballot can be taken in such a manner as to enable the council to comply with" the Open Meeting Law). Secret voting denies the public an opportunity to observe the decision-making process, to know the council members' stance on issues, and to be fully informed about the council's actions. *See Claude*, 518 N.W.2d at 841 (noting that one purpose of Open Meeting Law is to prohibit secret meetings that make it impossible for public to become fully

---

1. Regarding the issue of the council members' purpose in using the one-on-one interviews, we recognize that they did consult with the city attorney before establishing the interview procedure. Respondents argue that the city attorney relied on an unpublished order opinion in which this court approved of a district court's determination that serial one-on-one interviews do not violate the Open Meeting Law even though the plan was adopted to eliminate the application of the Open Meeting Law. *See Northwest Publications, Inc. v. City of Apple Valley*, No. C7–91–332

(Minn.App. Feb. 27, 1991). We question the reasonableness of the city attorney's reliance here. This court did not affirm the district court on the merits of that case, but merely denied a petition for extraordinary relief on an emergency basis.

2. The council termed the vote a "straw vote," which typically is not a formal binding official vote. In this case, however, the council acted upon the straw vote, giving it the same effect as an official vote.

informed). We conclude that the straw vote here was a secret vote, and, as such, violated the Open Meeting Law.

## DECISION

Under the Government Data Practices Act, respondents were obligated to disclose the names of job finalists at the time they decided to interview them, not when the candidates agreed to be interviewed. The Open Meeting Law prohibits the secret straw vote taken at the January 27 council meeting. We reverse the district court's entry of summary judgment on these two issues. We remand to the district court for a proper factual determination on the issue of whether respondents used the one-on-one interview process in order to avoid the requirements of the Open Meeting Law.

**Reversed and remanded.**