## LEIF E. JACOBSEN AND OTHERS v. V. M. NAGEL AND OTHERS.

96 N. W. (2d) 569.

May 8, 1959—No. 37,650.

*Andrew G. Kohlan,* for appellants.

*Hall, Smith, Hedlund, Juster, Forsberg & Merlin, Wyman Smith,* and *Thomas G. Forsberg,* for respondents.

KNUTSON, JUSTICE.

Appeal from a judgment of the district court and from an order denying a motion for a new trial.

Upon a petition the district court allowed an alternative writ commanding defendants to set a special election for the recall of V. M. Nagel as councilman of the First Ward, city of Fridley, or to show cause why they had not done so. Defendants filed an answer and a hearing was held. At the start of the hearing defendants moved to dismiss the proceedings on the ground that no cause of action was stated,

which motion was denied. After trial, the court made findings and ordered that a peremptory writ issue. Defendants moved to amend the findings or for a new trial. Thereafter the court denied the motion and this appeal was taken.

The trial court found that each of the defendants is a voting member of the city council and that said defendants constitute all of its voting members; that each of the petitioners is a member of a committee seeking a recall election pursuant to the home rule charter of the city of Fridley for the office held by V. M. Nagel as a councilman; and that on April 11, 1958, petitioners filed a certificate for the recall of said Nagel with the city clerk pursuant to Charter of the City of Fridley, §§ 5.13 to 5.18.

The court further found that at all times material said Nagel was the duly elected and acting councilman of the First Ward, city of Fridley; that on April 14 and 15, 1958, the petitioners filed with the city clerk its recall petition consisting of various parts containing genuine signatures of registered voters of the city; that each part of the petition contained a copy of the charges against the councilman proposed to be recalled; that the signatures were verified by a circulator as required by the charter; that on the evening of April 15, 1958, at a meeting of the city council, at a time when all of the named defendants were present, the city clerk made and delivered said certificate to Nagel, the other members of the council, and to Robert L. Buckley, one of the petitioners and a member of the recall committee; and that said certificate showed that the clerk found 804 accurate signatures on the petition, a number in excess of the required signatures under the charter; that said certificate also showed that there were 3126 registered voters in Fridley and that according to the requirements of the charter 25 percent of that number, or 781 signatures, would be sufficient for a recall petition; that the defendant council passed by a majority vote a resolution refusing to call a special election for the recall of said Nagel; and that said resolution carried with the vote of Nagel and two other councilmen.

After making findings with reference to Charter of the City of Fridley, § 5.01 and Chapter 2, the court found that the city council unlawfully failed to call a special election as required; that petitioners

have no speedy or adequate remedy at law; and that there was no evidence of fraud or misrepresentation in connection with the recall petition.

After making other findings with reference to the matter of the circulation of the petition complying with the charter and the fulfillment of her duties on the part of the clerk, the court ordered that a peremptory writ of mandamus issue, directed to the defendants and each of them, commanding them forthwith to call a special recall election for the recall of Nagel.

While several legal issues are raised on appeal, it appears to us that the pertinent one for our decision is whether the "removal" provision of Minn. Const. art. 13, § 2, applies to removal by recall under a home rule charter so that the certification for the recall of an elected municipal officer, filed with the city clerk, must state as grounds for removal conduct constituting malfeasance or nonfeasance in the performance of his duties. Minn. Const. art. 13, § 2, provides:

"The legislature of this State may provide for the removal of inferior officers from office, for malfeasance or nonfeasance in the performance of their duties."

Minn. Const. art. 4, § 36, provides in part:

"Any city or village in this state may frame a charter for its own government * * * but such charter shall always be in harmony with and subject to the constitution and laws of the state of Minnesota."

M. S. A. 410.04 provides the manner in which any city or village may frame a city charter for its own government. In connection with the framing of such a charter, § 410.07 provides that subject to the limitation of that chapter "it may provide for any scheme of municipal government not inconsistent with the constitution."

Specifically with reference to recall, § 410.20 provides that the charter may "provide for the recall of any elective municipal officer and for his removal by vote of the electors of such city."

The recall provisions involved here are Charter of the City of Fridley, §§ 5.13 to 5.18. Section 5.13 provides:

"Any five electors may form themselves into a committee for the

purpose of bringing about the recall of any elected officer of the city. The committee shall certify to the city clerk the name of the officer whose removal is sought, a statement of the grounds for removal in not more than 250 words, and their intention to bring about his recall. A copy of this certificate shall be attached to each signature paper and no signature paper shall be put into circulation previous to such certification."

As stated in the court's findings, the petitioners filed with the city clerk a certificate for the recall of Nagel and included in the certificate the grounds for removal, which were:

"1.   That he was not elected by, and in fact has not represented the majority of the citizens of his Ward. (He was elected by only 38% of those voting in the First Ward in the November 1957 General Elections.)

"2.   That in his short tenure, he has fostered a tight control of city affairs by the so-called 'Taxpayers' group. This has resulted in attacks on city officials and personnel, reprisals against individual citizens and unwarranted harrassment of residential, commercial and industrial developments. Such tactics will blight the necessary growth of our city.

"3.   That he has maneuvered to increase the assessments for the sanitary sewer and water trunks along East River Road in an attempt to stop the extension of said service. The Council Plan, supported by Mr. Nagel will increase the assessments on residents west of the railroad tracks by 65.68% over what the southern portion of the city has been assessed. (A total assessment of $1.69 against an average of $1.02 per 100 square feet in the southern part of the city.)

"The trunk lines now under consideration will eventually serve the entire northwest section of the city. But under Mr. Nagel's plan, his own substantial land-holdings will not assume their share of this cost.

"4.   That Mr. Nagel has ignored the desires and petitions of a substantial portion of his constituents in regard to the recent rezoning of the area north of Rice Creek from 'Residential' to 'Industrial.' "

It is our opinion that recall is but another method of removal by which the final determination is left to the elector. Jones v. Harlan (Tex. Civ. App.) 109 S. W. (2d) 251. Accordingly the process of recall is gov-

erned by the provisions applicable to removal. The prerequisites of removal, as declared by Minn. Const. art. 13, § 2, are applicable to elective municipal officers, and they may not be removed except for malfeasance or nonfeasance in office. In Sykes v. City of Minneapolis, 124 Minn. 73, 77, 144 N. W. 453, 455, we said:

"* * * There can be no doubt that all elective municipal officers come within this section [Minn. Const. art. 13, § 2], and that such may not be removed except for malfeasance or nonfeasance in office."

To constitute malfeasance or nonfeasance the conduct must be such as affects the performance of official duties rather than conduct which affects the official's personal character as a private individual. State ex rel. Martin v. Burnquist, 141 Minn. 308, 170 N. W. 201. Although affecting the performance of official duties, the conduct "must relate to something of a substantial nature directly affecting the rights and interests of the public." State ex rel. Kinsella v. Eberhart, 116 Minn. 313, 321, 133 N. W. 857, 860, 39 L.R.A. (N.S.) 788.

That which constitutes malfeasance in an official capacity is not susceptible of an exact definition. It "has reference to evil conduct or an illegal deed, the doing of that which one ought not to do, the performance of an act by an officer in his official capacity that is wholly illegal and wrongful." 43 Am. Jur., Public Officers, § 195.[1]

With respect to nonfeasance it is the "neglect or refusal, without sufficient excuse, to do that which is the officer's legal duty to do." 43 Am. Jur., Public Officers, § 196. We see no elements of nonfeasance in the present case.

Certain conduct may clearly come within the purview of malfeasance, such as bribery (In re Application for Removal of Nash, 147 Minn. 383, 181 N. W. 570) or the receipt of emoluments by a commission member from one subject to its regulation and control. State ex rel. Beck v. Young, 154 Neb. 588, 48 N. W. (2d) 677. We are not prepared to consider all conduct which would come within the meaning of malfeasance and are of the opinion, recognizing the foregoing definitions, that the grounds for removal which were claimed here are insufficient to show malfeasance or nonfeasance on the part of the

---

[1]For a list of definitions, see Daugherty v. Ellis (W. Va.) 97 S. E. (2d) 33.

officer sought to be recalled. Rather it appears to us that the grounds indicate political criticisms of Nagel's actions as an alderman. The voters of his ward may have an opportunity at the next duly constituted election for alderman, in case he is a candidate, to voice their disapproval at the polls, but we cannot see where the petition here is sufficient to show any malfeasance or nonfeasance which would justify the invoking of the recall provisions of the charter.

Reversed.