**CITY OFFICERS: REMOVAL:** City charter may not provide for removal of council member by council. Grounds for removal of elected local official must amount to malfeasance or nonfeasance in office. Minn. Const. art. VIII, § 5; art. XII, §§ 3, 4. Minn. Stat. §§ 351.02, 351.14, 410.07, 410.20.

59a-30

July 24, 1996

John B. Dean
Attorney at Law
Kennedy & Graven
470 Pillsbury Center
Minneapolis, MN 55402

Dear Mr. Dean:

In your letter to Attorney General Hubert H. Humphrey III you set forth substantially the following:

## FACTS

The City of Richfield operates under a home rule charter adopted in 1964. Recently the Charter Commission submitted a proposed charter amendment regarding council member attendance at regular council meetings. If amended, Section 2.05 of the charter would read, in relevant part, as follows:

> Section 2.05 Vacancies. Subdivision 1. Existence
>
> . . .
>
> (2) As soon as it is determined that a Council Member is ineligible because of any of the following reasons: . . . <u>(viii) failure of a council member to attend six regular council meetings during a six-month period which would constitute non-feasance in office</u>, the Council shall by resolution at a regular or special council meeting, declare a vacancy on the Council to exist. [Underlined material is the amendment proposed by the charter commission].

John B. Dean
July 24, 1996
Page 2

You then ask substantially the following questions:

## QUESTION ONE

Except in situations involving such matters as death, resignation or moving away of the elected official, does the city have authority, through the proposed amendment, to provide for removal from office, for any reason, without the vote of the electors of the city?

## OPINION

Your question is answered in the negative.

The specific situations which you mention in your question are all considered to create vacancies in elective office pursuant to Minn. Stat. § 351.02 (1994). These vacancies occur upon the happening of the specific event directly related to the officer's qualifications, ability, or willingness to hold the office in question. While a governing body or other authority might identify and declare the facts giving rise to these vacancies, for all practical purposes they occur automatically and are not based upon any removal action. However, nowhere in Minn. Stat. § 351.02 is the city given the ultimate authority to declare a vacancy for any reason not explicitly stated in the statute.

Minn. Stat. § 351.02(3) does provide that an office becomes vacant upon the incumbent's "removal" from office, but does not set out the permissible grounds for removal from any particular public office. Thus the authority and procedures for removal must be found elsewhere in statutes or charter. C.f. Op. Atty. Gen. 475-h, April 30, 1985 (removal of transit commission appointees limited to circumstances expressly listed in statute).

Article 8, § 5 of the Minnesota Constitution addresses the removal of "inferior" officers. It states:

> The legislature of this state may provide for the removal of inferior officers for malfeasance or nonfeasance in the performance of their duties.

This provision applies to elected municipal officials and has been interpreted to mean that such officials cannot be removed except for malfeasance or nonfeasance in office. Sykes v. City of

Minneapolis, 124 Minn. 73, 77, 144 N.W. 453, 455 (1913). Thus, the legislature is given broad power to provide for removal of elected local officials, so long as the basis therefor is "malfeasance" or "nonfeasance" in office.[1]

There is no constitutional requirement that removal of elected officials be by the vote of the electors. However, there does appear to be such a requirement in the state statutes authorizing removal of elected officials pursuant to city charters.

Article 12, section 3 of the Minnesota Constitution provides that "the legislature may provide by law for the . . . organization . . . of local government units and their functions . . . [and] for their elective and appointive officers. . . ." Article 12, section 4 of the Minnesota Constitution provides that any local government unit when authorized by law may adopt a home rule charter city. This language allows the legislature to exercise control over the actions of a home rule charter city. The legislature has specifically addressed the authority to provide for removal of elected city officials by charter through the enactment of Minn. Stat. § 410.20 (1994), which provides in part:

> [S]uch commission may also provide for the recall of any elective municipal officer and for removal of the officer by vote of the electors of such city.

This language indicates that the charter commission has the authority to provide for the "removal" of elective officials only by the vote of the electors. However, there may be some question as to whether the power to provide for "recall" might permit some process for removal without the vote of the electors.

We think it does not. While there appears no direct authority in Minnesota on the meaning of the term "recall," examination of case law from other jurisdictions leads to the

---

1. Sykes involved art. 13, § 2 of the Minnesota Constitution which was renumbered to art. 8, § 5 when the Minnesota Constitution was restructured in 1974. The wording is exactly the same as it was before the provision was renumbered.

conclusion that "recall" is synonymous with "removal" and requires the vote of the electors. See generally, 36 Words and Phrases, "Recall."

In Poprosky v. Shea, 21 Conn. App 351, 354, 573 A.2d 756, 758 (Conn. App. Ct. 1990), the court defined "recall" as "a procedure where an elected official may be removed at any time during his term of office by a vote of the people. . . ." In Collins v. Morris, 263 Ga. 734, 735, 438 S.E.2d 896, 897 (Ga. 1994), "recall" was defined as "a procedure whereby it is the voter themselves who make the ultimate determination as to whether an official should retain his office for the duration of the term to which he was elected." In Wallace v. Tripp, 358 Mich. 668,678, 101 N.W.2d 312, 314 (Mich. 1960), the court looked to the definition of "recall" in Webster's New International Dictionary (2d Ed.) which defined "recall" to be "the right or procedure by which a public official . . . may be removed from office, before the end of his term of office, by a vote of the people. . . ." The Wallace definition appears in Black's Law Dictionary, 1433 (6th Ed. 1990), along with the following derived from Jones v. Harlan, 109 S.W.2d 251, 254 (Tex. Civ. App. 1937): "A method of removal of official in which power of removal is either granted to or reserved by the people."

Minn. Stat. § 410.20 gives no indication that the term "recall" is intended to have a meaning other than that related to the removal procedure requiring the vote of the electors. Thus, in our opinion, "recall," as set out in Minn. Stat. § 410.20, requires the vote of the electors.

Furthermore, it is our view that the removal provisions set out in Minn. Stat. § 410.20 are the exclusive methods for removal of elected officials which a charter may provide. The power of the legislature to provide for the removal of officers is exclusive pursuant to art. 8, § 5. State v. Essling, 268 Minn. 151, 128 N.W.2d 307, 311 (Minn. 1964), citing Sykes v. City of Minneapolis, 124 Minn. 73, 144 N.W. 453, 455, (Minn. 1913).[2]

---

2.  Both cases cited to art. 13, § 2, the previous version of art. 8, § 5.

As the subject of removal of officers is within legislative control, where that body prescribes a manner and method of removal, it is exclusive. Brandt v. Thompson, 91 Minn. 279, 97 N.W. 887 (1904). In this case, the legislature has prescribed a method of removing elected officials in a home rule charter city in Minn. Stat. § 410.20. Following the holding in Brandt, the removal of elected officials by the vote of the electors, as set out in Minn. Stat. § 410.20, would be exclusive, and the proposed charter amendment would not be permissible as it does not allow the electors to vote on the issue.

This conclusion finds further support under the doctrine of expressio unius est exlusio alterius which provides that, in statutory interpretation, there is an inference that all omissions should be understood as exclusions. Sutherland Stat. Const. § 47.23 (5th Ed). A statute which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing any other way. Sutherland Stat. Const. § 47.23 (5th Ed). In this case, it means that because Minn. Stat. § 410.20 allows for the removal of elected officials by the vote of the electors, the presumption arises that this is the exclusive method of removal of elected officials.

## QUESTION TWO

Must the reasons for removal of an elected city official pursuant to the charter amount to malfeasance or nonfeasance as is required in art. 8, § 5 of the Minnesota Constitution?

## OPINION

Your question is answered in the affirmative.

Minn. Stat. § 410.07 provides that the charter commission "may provide for any scheme of municipal government not inconsistent with the constitution. . . ." If the charter provisions are inconsistent with constitutional provisions, the constitutional provisions are controlling. Op. Atty. Gen. 63A-1, March 29, 1938. The legislature has complete power to remove an elected official from office or to authorize such removal subject only to the limitations the

constitution may impose on the particular office. State v. Oehler, 218 Minn. 290, 16 N.W.2d 765 (1944). The prerequisites of removal are set out in art. 8, § 5 of the constitution which provides that elective municipal officers may not be removed except for malfeasance or nonfeasance in office. Jacobsen v. Nagel, 255 Minn. 300, 304, 96 N.W.2d 569, 572 (1959). The art. 8, § 5 limitations on the removal of public officials from office apply regardless of whether those limitations are explicitly acknowledged in statutes providing for such removal. Claude v. Collins, 518 N.W.2d 836, 842 (Minn. 1994). Thus it is our view that removal of elected city officials pursuant to charter must be based upon malfeasance or nonfeasance in office.

## QUESTION THREE

If the standard of art. 8, § 5 is applicable, does the city have authority, through the proposed amendment, to determine for itself what "acts" automatically constitute nonfeasance?

## OPINION

We are not in a position to provide an absolute answer to your question. As noted above, Minnesota statutes authorizing removal of elected city officials pursuant to the charter, requires a vote of the electors. Thus no act of the officer could, standing alone, result in automatic removal for nonfeasance. See also, Op. Atty. Gen. 1926, No. 68, p. 75 (county board had no authority to declare a vacancy in office of coroner due to nonfeasance of the incumbent). Furthermore, while a charter could specify particular conduct which, as a matter of law, would support removal of an elected official for nonfeasance, it does not appear that the language of the proposed amendment is necessarily sufficient in that regard. The proposed language may be interpreted[3] to say that missing six meetings in six months constitutes nonfeasance per se without regard to the reasons the meetings were missed.

---

3. We do not generally undertake by way of opinions to construe provisions of local charters. See, Op. Atty. Gen. 629a, May 9, 1975.

Minn. Stat. § 351.14, subd. 3, which provides for removal of elected county officials, defines "nonfeasance" as "the willful failure to perform a specific act which is a required part of the duties of the public official." While that statute is not directly applicable to removal of city officials, its definition is consistent with the general rule that nonfeasance is the failure to do that which is the officer's legal duty to do, without sufficient excuse. Jacobsen v. Nagel, 255 Minn. 300, 304, 96 N.W.2d 569, 573; Claude v. Collins, 518 N.W.2d 836, 842. This principle would require a determination as to whether there was a valid reason to miss the meetings or at a minimum an unrefuted assertion that no legitimate excuse has been presented by the council member.

In Op. Atty. Gen. 450-A-11, March 6, 1957, we addressed a situation where the elected county treasurer became ill and was absent from work for six months. We found no authority for holding that illness, even though protracted, constitutes non-feasance on the part of the officer warranting his removal from office. For similar reasons, it is our view that the missing of a number of meetings, standing alone, would not be held to constitute nonfeasance in office.

Very truly yours,

HUBERT H. HUMPHREY III
Attorney General

KENNETH E. RASCHKE, JR.
Assistant Attorney General