**In re Proposed Petition to Recall Governor Jesse VENTURA.**

No. C9–99–1726.

Supreme Court of Minnesota.

Oct. 18, 1999.

ORDER

Pursuant to Minn.Stat. § 211C.04 (1998), the secretary of state has referred a proposed petition to recall Governor Jesse Ventura to the chief justice for review. The statutory review process requires the chief justice to review the proposed petition to determine whether it alleges specific facts that, if proven, would constitute grounds for recall of the officer under Minn. Const. art. VIII, § 6 and Minn. Stat. § 211C.02 (1998).

In 1996 the citizens of Minnesota amended the constitution to provide for recall of legislators, constitutional officers and judges. *See* Minn. Const. art. VIII, § 6. In accordance with the new constitutional provision, the legislature enacted Minn.Stat. ch. 211C (1998) establishing the process by which a recall election could be initiated. Because this is the first use of the new recall provisions, a description of the process enacted by the legislature is in order.

First, a proposed petition for recall signed by at least 25 eligible voters must be filed with the secretary of state along with a filing fee of $100. If the proposed petition satisfies statutory filing requirements, it is forwarded to the clerk of appellate courts and submitted to the chief justice. *See* Minn.Stat. §§ 211C.04 and 211C.05, subd. 1 (1998). The chief justice has 10 days to make an initial determination on the adequacy of the allegations in the petition. *See* Minn.Stat. § 211C.05, subd. 1. That is, the chief justice must review the proposed petition to determine if it alleges specific facts that, if proven, would constitute grounds for recall. *See id.* If the allegations are insufficient, the proposed petition is dismissed. *See id.* If they are sufficient, the chief justice appoints a special master, who must be an active or retired judge, to hold a public hearing on the factual allegations within 21 days. *See id.;* Minn.Stat. § 211C.05, subd. 2 (1998). The special master has seven days after the hearing to decide if any of the allegations have been proven true by a preponderance of the evidence and if those proven allegations are sufficient to warrant issuing a recall petition. *See id.* If the special master determines that the standards have been met, the entire supreme court considers the special master's report and has 20 days to decide if the recall standard has been met. *See*

*id.* § 211C.05, subd. 3 (1998). If it has, a recall petition based on the proven allegations can be circulated for signatures. *See* Minn.Stat. § 211C.06 (1998). If the requisite number of signatures is obtained within 90 days, a recall election will be held. *See id.;* Minn.Stat. § 211C.07 (1998). The number of signatures needed is 25 percent of the votes cast for the subject office at the last election. *See* Minn. Const. art. VIII, § 6. We are at the initial stage of the preliminary screening process described above in which the chief justice, sitting individually, must determine whether the proposed petition alleges specific facts that, if proven, would constitute grounds for recall of the governor.

The grounds for recall specified by the constitutional and statutory provisions are "serious malfeasance or nonfeasance during the term of office in the performance of the duties of the office or conviction during the term of office for a serious crime." Minn. Const. art. VIII, § 6; Minn.Stat. § 211C.02. Petitioners assert only the ground of malfeasance as the basis for their proposed recall petition. Malfeasance is expressly defined in Minn. Stat. § 211C.01, subd. 2 (1998), as "the intentional commission of an unlawful or wrongful act by a state officer * * * in the performance of the officer's duties that is substantially outside the scope of the authority of the officer and that substantially infringes on the rights of any person or entity."

Petitioners make four allegations. First, they allege that the use of state security personnel to protect the governor on a book promotion tour constituted illegal use of state property for personal gain.

Second, petitioners allege the governor used his official position to secure benefits or advantages different from those available to the general public. Specifically, petitioners allege the governor used the prestige of his office to extract an increased price for his book, to increase sales of the book, and to increase his fee for refereeing a wrestling match.

Third, petitioners allege the governor's acceptance of gifts and favors from outside sources, including the book publisher and promoters of the wrestling match, violated laws prohibiting the receipt of outside compensation by state employees.

Finally, petitioners allege a conflict of interest between the governor's official duties and his personal financial interests. Specifically, petitioners assert that the more outrageous the governor's conduct the greater his opportunity for personal gain and that the governor's outrageous comments compromise the reputation, honor and effectiveness of the office of governor.

Petitioners allege that this conduct constitutes malfeasance that justifies recall of the governor. The definition of malfeasance contained in the recall statute can be divided into five identifiable elements:

1. an intentional act;
2. that is unlawful or wrongful;
3. in the performance of the officer's duties;
4. that is substantially outside the scope of the authority of the officer; and
5. that substantially infringes on the rights of any person or entity.

*See* Minn.Stat. § 211C.01, subd. 2. To constitute malfeasance, the conduct alleged must satisfy all of these elements. Moreover, only "serious" malfeasance constitutes grounds for a recall petition. *See* Minn.Stat. § 211C.02. The question therefore is whether the conduct alleged, assuming for purposes of this review that it can be proven, satisfies each of the elements of the statutory definition of malfeasance. *See* Minn.Stat. § 211C.05, subd. 1.

Assuming the factual allegations in the proposed petition can be proven, most of the conduct challenged is in the realm of the governor's personal and private life, not the performance of his official duties. But the general standard for recall stated in both the constitutional and statutory

provisions applies expressly to acts "in the performance of the duties of the office." Minn. Const. art. VIII, § 6; Minn.Stat. § 211C.02. Similarly, the definition of malfeasance in the recall statute requires that to constitute malfeasance the acts challenged must be "in the performance of the officer's duties." Minn.Stat. § 211C.01, subd. 2.

In this respect, the recall standard is consistent with prior Minnesota cases dealing with removal of inferior public officials for alleged malfeasance.[1] In those cases, the court has rejected claims centered on conduct unrelated to official duties. *See, e.g., Jacobsen v. Nagel,* 255 Minn. 300, 304, 96 N.W.2d 569, 573 (1959) (explaining that conduct must affect official duties rather than personal character as a private individual); *State ex rel. Martin v. Burnquist,* 141 Minn. 308, 321, 170 N.W. 201, 203 (1918) (noting that "the character of the man must be separated from his character as an officer.").

■■■■ The allegation that the governor received an increased price for his book, sold more books, and was paid a higher fee for refereeing a wrestling match because he is the governor concerns his private conduct, not the performance of his official duties. The fact that a public official enjoys greater personal opportunities as a result of holding office does not implicate the recall statute in the absence of allegations concerning specific acts in the performance of the duties of the office. Petitioners do not identify any acts in the performance of the governor's official duties that are related to the private conduct about which they complain.

Specifically, petitioners allege that the enhanced book deal and compensation for the wrestling appearance violate state law because the governor has used his office to secure benefits different from those available to the general public and used the prestige of his office for private gain. Although petitioners do not identify the laws allegedly violated by this conduct, Minn. Stat. § 43A.38, subd. 5(a) (1998), identifies as a conflict of interest use of the employee's official position to secure benefits different from those available to the general public. The statute also deems it a conflict of interest to use the prestige or influence of state office for private gain. *See* Minn. Stat. § 43A.38, subd. 6(a) (1998). Even assuming, without deciding, that the governor is an employee covered by these statutes and that the conduct alleged violates the statutes, the requirements of the recall statute are not met unless the conduct alleged to violate the statutes involves acts undertaken in the performance of official duties. Petitioners have failed to identify any acts in the performance of official duties implicated by the alleged conflicts of interest, as required by the recall statute.

■■■■ Petitioners also allege that the governor improperly received gifts and favors from outside sources for his book and wrestling match appearance. This allegation is deficient as an initial matter because it fails to identify with any specificity what gifts and favors were allegedly received. Allegations in a proposed recall petition must be made with sufficient precision and detail to enable the challenged official and the electorate to make informed decisions in the recall process. *See Matter of Lee,* 122 Wash.2d 613, 859 P.2d 1244, 1247 (1993). Petitioners allege the unspecified gifts and favors violated laws prohibiting outside compensation for state employees. Again petitioners do not identify the law violated, but Minn.Stat. § 43A.38, subd. 2 (1998), prohibits the receipt of compensation from any source other than the state "for any activity related to the duties of the employee" and which is received "in the course of or in relation to their official duties." *Id.* Petitioners fail to

---

1. Although the 1996 constitutional amendment authorized recall for legislators, constitutional officers and judges for the first time, the constitution has long allowed the legislature to "provide for the removal of inferior officers for malfeasance or nonfeasance in the performance of their duties." Minn. Const. art. VIII, § 5.

connect the alleged gifts and favors to the governor's official duties, which is required to constitute a violation of chapter 43A. In this respect, both the law allegedly violated and the recall statute require a nexus between the allegedly improper conduct and the official's duties, yet none is alleged.

 Petitioners also allege the governor has a conflict of interest because the more outrageous his conduct, the greater his opportunities for personal gain. This allegation fails to satisfy the recall statute standard for at least two reasons. First, there are no allegations of particular conduct that is alleged to create the conflict and, as noted, allegations in a recall petition must be specific. Second, petitioners' general allegation again concerns the governor's private conduct rather than his performance of official duties.

Because the allegations about the governor's book contract, his appearance at a wrestling event and a conflict of interest based on outrageous conduct relate to personal activities not specifically related to the performance of official duties, the conduct cannot be serious malfeasance in office as the legislature has defined that term in the recall statute.

 The remaining allegation is that by using state security personnel on a book promotion tour, the governor improperly used state property for personal gain. It must first be noted that continuous protection of the governor by state personnel has long been the practice, whether the governor is performing official duties or engaged in private activities. This protection is a practical necessity of the office. Moreover, protection of the governor is not a matter of personal benefit. Rather, the need for security is the result of the governor's official position, and protection of any governor benefits the citizens of Minnesota as much as the governor himself.

Like the other allegations, the allegation regarding use of security personnel must also meet the factors in the definition of malfeasance to constitute grounds for a recall petition. Even if the governor's use of state personnel for security on the book tour could be construed as an act within his official duties, the requirement of the recall statute that the conduct was "unlawful or wrongful" is a hurdle petitioners cannot surmount.

For the purposes of the recall statute and this review of the legal sufficiency of the allegations in the proposed petition, the phrase "unlawful or wrongful" must be read in its context. The context here is a definition of malfeasance by public officials. Although the phrase "unlawful or wrongful" has not previously been interpreted in this context, the term malfeasance has been construed in a number of cases. The court recently explained:

> In defining malfeasance, we have said that malfeasance "in an official capacity is not susceptible of an exact definition [but, it] 'has reference to evil conduct or an illegal deed, the doing of that which one ought not to do, the performance of an act by an officer in his official capacity that is wholly illegal *and* wrongful.'"

*Claude v. Collins*, 518 N.W.2d 836, 842 (Minn.1994) (alterations in original) (emphasis added) (quoting *Jacobsen v. Nagel*, 255 Minn. at 304, 96 N.W.2d at 573). In its malfeasance decisions the court has not articulated any distinction between unlawful and wrongful conduct. This may be because with rare exception the cases in which the court has identified conduct as malfeasance by a public official or employee involved conduct that was illegal. *See, e.g., Horace Mann Ins. Co. v. Independent School Dist. No. 656*, 355 N.W.2d 413, 421 (Minn.1984) (stating that for purposes of indemnification under the Municipal Tort Claims Act, a teacher's sexual contact with 16–year–old student is malfeasance); *State v. Raasch*, 201 Minn. 158, 161, 275 N.W. 620, 622 (1937) (affirming conviction for criminal malfeasance in office based on police officer's collaboration with and assistance to an illegal gambling operation);

*State v. Wedge,* 24 Minn. 150, 153 (1877) (holding that county attorney's aid to escape of a person in custody is official misconduct). Thus, the predominant judicial interpretation of malfeasance has carried a connotation of unlawfulness.

■ The legislature's use of the disjunctive "or" between "unlawful" and "wrongful" in the recall statute may have been intended to establish a somewhat broader malfeasance standard that includes some conduct that is wrongful but not necessarily unlawful. An additional and more informative indication of the legislature's intent is that in the historical framework of the supreme court's malfeasance decisions the legislature adopted a preliminary review process that is obviously designed to test the legal sufficiency of the allegations in a proposed recall petition. Taking the statutory construct and the judicial history together, it is unlikely the legislature intended the scope of wrongful-but-not-unlawful conduct that can constitute malfeasance to be entirely independent of legal norms. Otherwise, the determination of the legal sufficiency of the allegations could turn not on a substantive legal standard but on nothing more than the reviewing justice's, and subsequently the supreme court's, subjective judgment about whether certain conduct is right or wrong. The prudent course, consistent with the context in which the terms are used and the role of courts in making judgments based on legal standards, is to construe the phrase "unlawful or wrongful" in the recall statute's definition of malfeasance to mean conduct that is contrary to a legal standard established by law, · rule or case law. This serves to maintain a minimum threshold of legal sufficiency against which to test the allegations in a proposed recall petition.

Applying this standard to the allegations about use of security personnel on the book tour leads to the conclusion that no unlawful or wrongful conduct has been alleged. In response to the proposed petition for recall, the governor submitted a memorandum from the attorney general's office in which the governor's office was advised that it was permissible under existing statutes for state funds to be used to pay security personnel that accompanied the governor on his book tour. In addition, petitioners submitted a copy of a letter from the legislative auditor reporting on his special review of the situation. The auditor agreed with the attorney general, acknowledging the legality of the use of state security personnel to protect the governor at all times, even on a private book tour.

This reviewing justice concurs with the conclusions of these public officials that use of reasonable security personnel to protect the governor at state expense, even on a personal trip, is not contrary to any established legal standard. The specific conduct alleged is therefore not unlawful or wrongful and the standard of the recall statute has not been met.

■ Finally, the governor seeks an award of attorney fees incurred in responding to the proposed petition as a sanction for the filing of a frivolous petition. The recall statute does not authorize such an award. Minnesota Statutes § 211C.05, subd. 3, authorizes the supreme court, not the chief justice acting individually under subdivision 1, to assess the persons proposing a petition for "reasonable costs of conducting the proceeding" if it decides to dismiss the petition because it was filed in bad faith in violation of Minn. Stat. § 211C.09 (1998). By its terms the statute provides only for a sanction assessing the costs of the proceeding and not an award of attorney fees, and only after a hearing before a special master has been ordered and held under Minn.Stat. § 211C.05, subd. 2. Because no hearing has been held and the statute does not specifically authorize an award of attorney fees, the request for attorney fees must be denied.

In conclusion, the factual allegations in the proposed petition to recall the governor identify only conduct that fails to satisfy the elements of the statutory definition

of malfeasance because the conduct alleged either was not within the performance of the governor's official duties or was not unlawful or wrongful. Accordingly, even if the factual allegations were proven, the grounds for recall would not be satisfied and the proposed petition must be dismissed pursuant to Minn.Stat. § 211C.05, subd. 1.

Now therefore, based upon all the files, records and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. The proposed petition for recall be, and the same is, dismissed; and

2. The governor's request for an award of attorney fees be, and the same is, denied.

Kathleen A. Blatz
Kathleen A. Blatz
Chief Justice