STATE OF MINNESOTA

IN SUPREME COURT

A23-1780

Anoka County

Kay "KT" Jacobs,

        Appellant,

vs.

City of Columbia Heights, et al.,

        Respondents.

Hudson, C.J.
Took no part, Hennesy, J.

Filed:  July 24, 2024
Office of Appellate Courts

_____

Gregory J. Joseph, Joseph Law Office PLLC, Waconia, Minnesota, for appellant.

Bradley A. Kletscher, Tyler W. Eubank, Barna, Guzy & Steffen, Ltd., Coon Rapids, Minnesota, for respondents.

_____

S Y L L A B U S

The petition to recall a member of a city council failed to allege malfeasance or nonfeasance, the constitutional prerequisites to recall an elected municipal official, and consequently failed to lawfully trigger a special recall election under Minnesota Statutes section 410.20 (2022).

Reversed.

1

HUDSON, Chief Justice.

We are required here to determine under what circumstances a petition to recall a member of a city council lawfully triggers a special recall election under Minnesota Statutes section 410.20 (2022). On July 24, 2023, based on a petition to recall appellant Kay "KT" Jacobs, the Columbia Heights City Council passed a resolution to hold a recall election regarding Jacobs. The recall petition stated Jacobs should be recalled because she used a fake name and made derogatory comments about the heritage and family background of a person running for city council during a telephone call with that person, was untruthful during a city investigation into the incident, and was subsequently stripped of her ability to serve on boards and commissions and was censured by the council.

In response, Jacobs filed a petition pursuant to Minnesota Statutes section 204B.44 (2022) asking the district court, in part, to cancel her recall election, which was scheduled for February 13, 2024. Jacobs' section 204B.44 petition alleged that the recall petition failed to satisfy the requirements for recall petitions found in Minnesota Rule 8205.1010 (2023). Jacobs also asserted that the recall petition failed to allege that Jacobs committed malfeasance or nonfeasance, the constitutional prerequisites to recall an elected municipal official. The district court denied Jacobs' section 204B.44 petition. We granted Jacobs' petition for accelerated review.

On February 9, 2024, we issued an order concluding that the grounds for recall stated in the petition to recall Jacobs did not meet the legal definitions of malfeasance or

nonfeasance and cancelled the recall election.  Our opinion now explains the reasons for our decision.

## FACTS[1]

This case stems from a phone call J.S. received on July 24, 2022.  At the time, J.S. was running as a candidate for city council in the City of Columbia Heights.[2]  During the call, the caller questioned, among other things, J.S.'s biracial heritage.  Specifically, the caller asked whether J.S. was "really biracial" and whether he had grown up in a white or Black household.  The caller identification read "Jacobs Kay" and gave a phone number associated with Jacobs.  J.S. thought the caller might be Jacobs, but when he directly asked, the caller denied that she was Jacobs.

The next day, on July 25, 2022, Jacobs left J.S. a voicemail acknowledging the phone conversation but claiming that the phone call was made by a family member with her phone.  Later that same day, J.S. attended a city council meeting and informed the city council of the call.  Following the meeting, Jacobs discussed the phone call with the city manager and city attorney.  She again maintained that the phone call was made by a family member with her phone.  On July 27, 2022, Jacobs posted on social media about the

---

[1]     We acknowledge that Jacobs has not admitted the substantive allegations in the recall petition, but based on Jacobs' statement in her opening brief that "[a]ll parties agree as to the relevant facts," we recite the key facts identified by the district court.

[2]     The respondents are the City of Columbia Heights and Sara Ion, in her official capacity as the City Clerk for the City of Columbia Heights.  In this opinion, we will refer to them collectively as "the City."

incident, explaining once more that an extended family member had used her phone to make a concerning call to J.S.

On August 1, 2022, the city council retained an independent investigator "to investigate and determine if the allegations raised at the July 25, 2022 open forum and related actions thereafter violate[d] the City Council Code of Conduct or reasonable expectations of conduct by a Columbia Heights City Council member." As part of the investigation, the investigator spoke with Jacobs. She denied making the phone call and repeated her assertion that the call was likely made by her husband's niece, a woman she described as having "low-level mental health issues."

The investigator concluded that, based on a preponderance of the evidence, Jacobs, not the niece, made the call to J.S. In the final report, the investigator concluded that "Jacobs failed to conduct herself in accordance with the City Council Code of Conduct" by "questioning [J.S.'s] biracial heritage and then misidentifying herself" and "failed to meet the City's reasonable expectations regarding respectful and professional communications" during the phone call. The investigator also found that Jacobs lied about the phone call and that by "making these repeated untruthful statements," Jacobs had "failed to conduct herself ethically and in accordance with the City Council Code of Conduct." Following release of the independent investigation, the city council removed Jacobs from her assigned boards and commissions and censured her.

On May 30, 2023, a committee of electors presented the City Clerk with a certificate stating their intention to recall Jacobs.[3] The certificate explained the grounds for recall:

> [Jacobs], a Columbia Heights City Council member, engaged in unethical behavior during the lead-up to the most recent election. She used a fake name to call and berate then-candidate [J.S.], making derogatory comments about his heritage and family background. After an independent investigation funded by the city, Jacobs was found to be untruthful and subsequently stripped of her ability to serve on boards and commissions and was censured by the council. Jacobs has refused to step down despite calls for her resignation, leaving the community with a disgraced elected official who cannot represent her constituents legitimately.

On June 28, 2023, the committee submitted its recall petition, but the petition was deemed insufficient because it lacked the required number of signatures. The committee collected additional signatures and resubmitted the recall petition on July 17, 2023. The committee's resubmitted petition was deemed sufficient, and at its July 24, 2023 meeting, the city council passed a resolution to hold a special recall election regarding Jacobs. The special recall election was set for February 13, 2024.

---

[3] The City of Columbia Heights is a home rule charter city. Columbia Heights, Minn., Charter § 2; *see* Minn. Stat. §§ 410.015, 410.04 (2022) (defining and authorizing home rule charter cities). The City Charter of the City of Columbia Heights identifies procedures required to recall elected municipal officials. Columbia Heights, Minn., Charter §§ 47–52; *see* Minn. Stat. § 410.20 (2022) (authorizing a home rule charter city to "provide for the recall of any elective municipal officer and for removal of the officer by vote of the electors of such city" in its city charter). To recall an elected official in Columbia Heights, a committee of five electors must certify their intention to recall a named officer to the city clerk. Columbia Heights, Minn., Charter § 47. The recall petition, among other requirements, must have the signatures of at least 25 percent of the number of electors who cast their votes in the last preceding regular municipal election. Columbia Heights, Minn., Charter § 49. If such a petition "be found sufficient," the city clerk must transmit it to the council, who then must, "by motion, provide for the holding of a special recall election." Columbia Heights, Minn., Charter § 50.

5

Jacobs, in response, filed a petition pursuant to Minnesota Statutes section 204B.44 asking the district court, in part, to cancel the special recall election. Jacobs' section 204B.44 petition asserted that the recall election was unlawful, alleging that the recall petition failed to comply with Minnesota Rule 8205.1010 (setting forth the procedural requirements applicable to "any petition required for any election in this state, including nominating petitions, recall petitions, and proposed recall petitions"). Jacobs' section 204B.44 petition also argued that the recall petition failed to allege that she had committed malfeasance or nonfeasance, the required constitutional grounds to recall an elected municipal official. The City filed a memorandum in opposition to Jacobs' section 204B.44 petition, arguing, among other things, that Rule 8205.1010 does not apply to municipal recall elections and suggesting that the recall petition alleged malfeasance.

The district court denied Jacobs' section 204B.44 petition. It found that the city charter, and not Rule 8205.1010, governed the procedural requirements for the recall petition. Because the requirements under the applicable sections of the city charter were met, the district court found that the recall petition was not procedurally deficient. The district court then considered whether the recall petition alleged malfeasance. Relying on *Jacobsen v. Nigel*, 96 N.W.2d 569 (Minn. 1959), the district court concluded that the recall petition did so.

Jacobs appealed, and we granted Jacobs' petition for accelerated review. On February 9, 2024, we issued an order reversing the decision of the district court and cancelling the recall election scheduled for February 13, 2024. We concluded that the grounds for recall stated in the petition to recall Jacobs did not meet the legal definitions

6

of malfeasance or nonfeasance.  This opinion sets forth in more detail our reasoning as summarized in our order dated February 9, 2024.

**ANALYSIS**

Minnesota Statutes section 204B.44 authorizes the filing of a petition to correct "any wrongful act, omission, or error of any . . . municipal clerk . . . or any other individual charged with any duty concerning an election." Minn. Stat. § 204B.44(a)(4).  Jacobs argues that the City erred by authorizing the recall election because the recall petition failed to allege malfeasance or nonfeasance, as required by the Minnesota Constitution.[4]  The City contends that the grounds for recall stated in the recall petition meet the definition of malfeasance.

The Minnesota Constitution contemplates the recall of inferior officers:  "The legislature of this state may provide for the removal of inferior officers for malfeasance or nonfeasance in the performance of their duties." Minn. Const. art. VIII, § 5.  This provision applies to the recall of elected municipal officers, who "may not be removed except for malfeasance or nonfeasance in office." *Jacobsen*, 96 N.W.2d at 572–73.  Because "recall is but another method of removal," the Minnesota Constitution's prerequisites for removal

---

[4]     Jacobs also makes an independent argument why the recall petition is unlawful.  She contends that Minnesota Rule 8205.1010 controls the form requirements for recall petitions for elected municipal officials, not the city charter, and that the recall petition failed to conform with all the form requirements in the Rule.  Because we conclude the recall petition failed to allege malfeasance, we need not address this argument.

of an inferior officer "are applicable to elective municipal officers." *Id.*[5] The grounds for recall address Jacobs' affirmative conduct, and accordingly fall within the scope of alleged malfeasance, rather than nonfeasance. *See id.* at 573.

A.

As an initial matter, Jacobs argues that the City forfeited the malfeasance issue on appeal by not raising it in the district court. Jacobs asserts that Minnesota Statutes section 204B.44 creates a burden on the City to defend the merits of the recall petition and that the City failed to meet this burden by declining to argue the issue of malfeasance before the district court. But we have held that a section 204B.44 petitioner has the burden to prove that an election official committed an error, omission, or wrongful act. *Butler v. City of Saint Paul*, 936 N.W.2d 478, 484 (Minn. 2019). Jacobs' argument improperly turns the applicable burden of proof on its head by presuming that an error did occur and that the City had the burden to prove otherwise.

Although the City has no burden of proof, Jacobs is correct that the City did not extensively brief the issue of malfeasance below. "A reviewing court must generally consider 'only those issues that the record shows were presented and considered by the trial court.' " *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quoting *Thayer v. Am.*

---

[5]    At the time of *Jacobsen*, the provision in the Minnesota Constitution addressing the removal of inferior officers was found in article XIII, section 2. 96 N.W.2d at 572. Although the location of this provision changed, its language did not. *See Shefa v. Ellison*, 968 N.W.2d 818, 832 n.18 (Minn. 2022) (noting that the 1974 restructuring of the Minnesota Constitution "did not reflect substantive changes" but "was intended 'only to make the Constitution more readable and stylistically correct' " (quoting *City of Golden Valley v. Wiebesick*, 899 N.W.2d 152, 159 (Minn. 2017))).

8

*Fin. Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn. 1982)). In its brief to the district court, the City asserted that it was not the correct party to argue malfeasance and instead the recall petition committee was the proper party. In a footnote, the City explained that if the committee had been a party to the lawsuit, it likely would have argued that Jacobs' alleged behavior amounted to malfeasance. Nevertheless, we have the discretion to consider issues that might otherwise be forfeited when the interests of justice require us to consider them. *See In re GlaxoSmithKline PLC*, 699 N.W.2d 749, 757 (Minn. 2005) (stating that "[g]enerally, we do not address issues that were not raised in a petition for review" but "we may deviate from [this general rule] in the interest of justice"). And notably, considering the issue of malfeasance "would not unfairly surprise" Jacobs on appeal, *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996); Jacobs briefed the issue of malfeasance below and the district court fully considered the issue, explaining in its order why it believed the petition alleged malfeasance. Accordingly, we proceed to analyze whether the recall petition alleged malfeasance.

B.

In *Jacobsen*, we addressed how to determine whether a claim of malfeasance is satisfied under Article VIII, section 5, of the Minnesota Constitution, which states that "[t]he legislature of this state may provide for the removal of inferior officers for malfeasance or nonfeasance in the performance of their duties." We established a three-element test. First, "the conduct must be such as affects the performance of official duties rather than conduct which affects the official's personal character as a private individual." *Jacobsen*, 96 N.W.2d at 573. Second, "the conduct 'must relate to something of a

9

substantial nature directly affecting the rights and interests of the public.' " *Id.* (quoting *State ex rel. Kinsella v. Eberhart*, 133 N.W. 857, 860 (Minn. 1911)). Third, while recognizing that "malfeasance in an official capacity is not susceptible of an exact definition," we defined the conduct as having " 'reference to evil conduct or an illegal deed, the doing of that which one ought not to do, the performance of an act by an officer in [their] official capacity that is wholly illegal and wrongful.' " *Id.* (quoting 43 Am. Jur., Public Officer, § 195). If any of these three elements are not met, then the malfeasance claim fails under Article VIII, section 5, of the Minnesota Constitution.

We analyze whether the recall petition here alleged malfeasance by determining whether the *Jacobsen* elements of a malfeasance claim are met. Because the third element is not satisfied, we conclude that the recall petition did not allege malfeasance, and we do not need to analyze the other two elements. *See Bendorf v. Commissioner of Public Safety*, 727 N.W.2d 410, 414 (Minn. 2007) (declining to examine additional factors in a multi-factor test when one factor was not met).

The third *Jacobsen* element is whether the conduct " 'has reference to evil conduct or an illegal deed, the doing of that which one ought not to do, the performance of an act by an officer in his official capacity that is wholly illegal and wrongful.' " *Jacobsen*, 96 N.W.2d at 573 (quoting 43 Am. Jur., Public Officer, § 195). In the context of a constitutional malfeasance claim, a former chief justice has described unlawful or wrongful conduct as "conduct that is contrary to a legal standard established by law, rule or case law." *In re Ventura*, 600 N.W.2d 714, 719 (Minn. 1999) (order) (Blatz, C.J.) (reviewing a proposed recall petition in her individual capacity pursuant to Minn. Stat. § 211C.05

(2022)).[6] This framing of the inquiry in *Ventura* likewise informs our analysis of the third *Jacobsen* element here. Our examination of this element must "turn . . . on a substantive legal standard"—one "established by law, rule or case law"—and not simply our "subjective judgment about whether certain conduct is right or wrong." *Id.*

Making racially insensitive comments and lying is certainly shameful behavior, but our subjective judgment about the wrongfulness of the act does not control. *See State ex rel. Martin v. Burnquist*, 170 N.W. 201, 203 (Minn. 1918) (holding that a probate judge's statements expressing sympathy for German actions during World War I was not malfeasance). And although Jacobs' conduct was found to violate the City of Columbia Heights Code of Conduct, a city council code of conduct is not a legal standard established by law, rule, or case law. *See In re Hatch*, 628 N.W.2d 125, 127 (Minn. 2001) (order) (Blatz, C.J.) (reviewing a proposed recall petition in her individual capacity pursuant to Minn. Stat. § 211C.05 and holding that the Attorney General's alleged "failure to abide by

---

[6] *Ventura* involved a petition to recall Governor Jesse Ventura, an elected state official. *Id.* at 715. The recall of elected state officials is governed by Minnesota Statutes chapter 211C (2022). Under chapter 211C, the definition of malfeasance for elected state officials differs from the definition of malfeasance we applied to inferior officers in *Jacobsen*, but these definitions are substantially similar in their requirement that the alleged conduct be wrongful. *Compare* Minn. Stat. § 211C.01 (defining malfeasance for elected state officials as "*the intentional commission of an unlawful or wrongful act* by a state officer other than a judge in the performance of the officer's duties that is substantially outside the scope of the authority of the officer and that substantially infringes on the rights of any person or entity") (emphasis added), *with Jacobsen*, 96 N.W.2d at 573 (defining malfeasance for elected municipal officials as having "reference to evil conduct or an illegal deed, the doing of that which one ought not to do, *the performance of an act by an officer in his official capacity that is wholly illegal and wrongful*") (emphasis added) (citation omitted) (internal quotation marks omitted). Accordingly, the former chief justice's comments in *Ventura* about malfeasance inform our analysis here.

11

professional norms" was not grounds for recall for nonfeasance under Minn. Stat. § 211C.02 (2022)).[7]  Moreover, Jacobs was not acting in her official capacity when she called J.S.  *See id.* at 127–28 (acknowledging that "[b]oth the constitutional and statutory recall provisions are based on malfeasance or nonfeasance in the performance of the duties of the office").  Accordingly, the third element is not satisfied for two reasons.  First, because Jacobs did not violate any legal standard established by law, rule, or case law.  And second, because Jacobs was not acting in her official capacity.

We acknowledge that Jacobs' conduct was inappropriate and caused harm, and nothing in our opinion should be read as condoning such behavior by an elected municipal official.  And we do not hold that allegations of inappropriate remarks and lying by an elected municipal official may never amount to malfeasance.  Such a determination will depend on the specific circumstances and should be made on a case-by-case basis.  Here, under the circumstances present, we hold that the recall petition did not allege malfeasance because the alleged conduct did not violate a substantive legal standard.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the district court.

Reversed.

HENNESY, J., not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.

---

[7]  Like *Ventura*, we rely on the former chief justice's reasoning in *Hatch* because the definition of malfeasance in Minnesota Statutes section 211C.02 is substantially similar to our definition in *Jacobsen*.

12