In the Matter of AGNES NAYLOR.

ANNA M. LANGLEY, as Acting Superintendent of Albion State Training School, Appellant; JAMES F. ANDERSON, as Special Guardian, Respondent.

Argued October 2, 1940; decided November 19, 1940.

*John J. Bennett, Jr., Attorney-General* (*James A. Noonan* and *James P. Cotter* of counsel), for appellant.

*James F. Anderson,* as special guardian, respondent.

SEARS, J. Section 451, subdivision 3, of article 17-A of the Correction Law (Cons. Laws, ch. 43, added L. 1935, ch. 111) permits the retention of prisoners in the Albion State Training School after the expiration of their terms upon the conditions and in accordance with the procedure set forth in section 440 of the same law. The apposite language of section 440 is as follows: " When the term of a prisoner confined in such institution * * * has expired, and, in the opinion of the superintendent thereof, such prisoner is a mental defective the superintendent shall apply to a judge of a court of record to cause an examination to be made of such person, by two qualified examiners, other than a physician connected with such institution, or by one such qualified examiner and a qualified psychologist. Such examiners, or such examiner and psychologist, shall be designated by the judge to whom application is made. Such examiners, or examiner and psychologist, if satisfied, after a personal examination, that such prisoner is a mental defective, shall make a certificate to that effect in the form and manner prescribed by this article. Such superintendent shall apply to a judge of a court of record for an order authorizing him to retain such prisoner at the institution, accompanying such application with such certificate of mental defect. Such judge, if satisfied that such prisoner is a mental defective, shall issue an order of retention, and such superintendent shall thereupon retain the prisoner at the institution until discharged as provided by law."

The statute contains this further provision: "The costs necessarily incurred in determining the question of mental deficiency, including the fees of the examiners, or examiner and psychologist, shall be a charge upon the amount appropriated for the support and maintenance of such institution, and be paid in the same manner as are other expenses of the institution."

Pursuant to the statutory provision and preliminary to application to a judge for the retention of Agnes Naylor, a prisoner in the Albion State Training School whose term had expired, the superintendent of the school applied to the County Judge of Orleans county to cause an examination to be made. The County Judge granted an order appointing two qualified examiners to conduct the examination, and also appointing a "special guardian" of the prisoner. After examining the prisoner the examiners certified that in their opinion she was a mental defective. A petition for her retention with the certificate of the examiners annexed was then presented to the same judge. Thereupon the judge caused the prisoner to appear before him twice for examination. On the second appearance the special guardian by authorization of the court called a third qualified examiner as a witness on the prisoner's behalf. The County Judge then by order denied the application of the superintendent to retain the prisoner and in the same order fixed amounts as compensation to be paid the special guardian and the third examiner who had been called by the special guardian as a witness, and made the amounts so fixed as compensation a charge upon the appropriation for the support of the school.

Before issuing an order for the retention of a prisoner after his term has expired, the judge to whom the petition is addressed must be "satisfied that such prisoner is a mental defective." To assist the judge to reach his decision, the statute assures him the advice of two qualified examiners or one qualified examiner and one psychologist as the judge may determine. These experts are to be of the judge's own choice. No provision is made in the statute for further

expert advice at the school's expense. The definiteness of the provision negatives any general power to impose further charges for experts upon the school. Statutory authorizations for expending public funds must be strictly construed. The allowance of compensation to the third examiner was unauthorized.

The statute contains no express authorization for the appointment of a special guardian. If power to appoint a special guardian or make provision for compensation for such an officer is authorized, it must be found elsewhere. The power vested in the Supreme Court by section 207 of the Civil Practice Act, and exercisable by a County Court under section 69 of the same act, to appoint a guardian *ad litem* or special guardian, may be invoked "for an infant or an incompetent." If the prisoner was competent she needed no special guardian; and if she was incompetent she had under the statute no right to freedom, the only right that a special guardian in such a case would be called upon to protect. A special guardian is not appointed for one seeking liberty through a habeas corpus proceeding or for a person defending himself against a criminal charge and pleading insanity as a defense. Even if we assume that a proceeding to determine competency is within the purview of the statutes just mentioned, another obstacle to its application exists in this instance. Such an appointment may be made for the protection of the rights and interests of the incompetent "except when it is otherwise expressly provided by law." (Civ. Prac. Act, § 207.) Section 440 of the Correction Law provides otherwise for the protection of the rights and interests of a prisoner who is thought to be an incompetent. We cannot say that the safeguards thus provided at the expense of the State are inadequate. No other pertinent statute has been called to our attention and we have found none. There was, therefore, neither power to appoint nor need for a special guardian in this proceeding.

The order of the Appellate Division should be reversed, without costs.

FINCH, J. (dissenting in part). I agree with the majority of the Appellate Division as to the appointment of the special guardian.

It is conceded that Agnes Naylor, the alleged incompetent, had fully served out the sentence imposed upon her by the court and was entitled to her liberty. So far as any judgment of court was concerned, she could have demanded her immediate discharge from custody. A legal proceeding was then instituted against her, having for its purpose her continued retention at this institution without limit of term, upon the ground that she was incompetent and should be permanently restrained from her liberty. It is obvious that such a proceeding was of the utmost importance, both to the person proceeded against and to the conscience of the court in arriving at a correct judgment. To have the person represented, the court appointed an attorney-at-law as guardian *ad litem* for the incompetent. This was especially necessary in the case at bar, because it appears in the briefs without contradiction that this alleged incompetent was hundreds of miles from her original home, her family and her friends.

In accordance with the express provisions of the Civil Practice Act: " The supreme court may appoint a guardian *ad litem* or special guardian for an infant or an incompetent person, at any stage in any action or proceeding, when it appears to the court necessary for the proper protection of the rights and interests of such infant or incompetent person and fix the fees and compensation of such guardian, except when it is otherwise expressly provided by law * * *." (Civ. Prac. Act. § 207.)

The Civil Practice Act gives to the county judge and the Supreme Court concurrent supervision over the custody of the person and the care of the property of a person who for any reason is incompetent to manage himself and his affairs. (§ 1356.) The Civil Practice Act also provides that the " County judge also possesses the same power and authority, in a special proceeding, which can be lawfully instituted before him, out of court, which a justice of the Supreme

Court possesses in a like special proceeding, instituted before him in like manner." (§ 75.) Thus the County Court has express authority to appoint an attorney-at-law as guardian *ad litem* for the alleged incompetent unless this power has been taken away.

Four objections are urged against this express statutory authority, permitting the judge to appoint an attorney to represent this alleged incompetent in the special proceeding before him. *First*, that this power expressly provided for in the Civil Practice Act, which is but an enactment in statutory form of the inherent power residing in the Supreme Court, has been expressly taken away by the provision in section 207 "except when it is otherwise expressly provided by law," and that such other provision has been made in section 440 of the Correction Law. It would seem an answer to this contention that this section of the Correction Law does not expressly or by implication negative the power of section 207 of the Civil Practice Act, but on the other hand is in accordance with the provisions of such section. In section 440, after the provision providing for the application to the judge to appoint two qualified examiners it is written that after such examination, if the certificate of these examiners recites that the person is incompetent, then the superintendent may start a proceeding to try the issue of whether the inmate is an incompetent. Section 440 then provides: " Such judge, *if satisfied* that such prisoner is a mental defective." (Italics not in original.) The expression " such judge, if satisfied " imports a judicial hearing on this issue. Such judicial hearing necessarily imports adequate representation of both sides on the issue presented. There is here no express or indirect provision doing away with the right of the judge to appoint a person to represent the incompetent, but on the other hand, there is direct provision that the judge must judicially pass upon this issue of competency, which necessarily implies that the parties before him must be adequately represented. Furthermore, the statute provides that the costs necessarily incurred in determining the question of

mental deficiency, including the fees of the examiner, shall be a charge upon the amount appropriated for the support and maintenance of the institution and to be paid as are paid the other expenses of the instution. Since the expenses are not limited to the fees of the examiners, it must necessarily be assumed to include such other necessary expenses, such as the appointment of an attorney to represent the incompetent, as are necessary to the proper conduct of the issue presented. Therefore there is nothing in section 440 of the Correction Law which takes away from the judge the power expressly conferred upon him in section 207 of the Civil Practice Act.

*Second.* It is next urged as an objection to the appointment of the guardian *ad litem* that no guardian *ad litem* is appointed by a court when an incompetent seeks freedom, because he (or she) claims that he has regained his mentality and is no longer incompetent. This case is in no way analogous to the case at bar. In the supposed analogy, the incompetent claims that the incompetency is ended and hence no representation of any sort is necessary, as the incompetent, in accordance with the claim made, is fully capable of making a defense.

*Third.* Next an analogy is sought from the fact that no attorney is appointed as guardian *ad litem* in the case when a prisoner, or those representing him, pleads insanity as a defense for crime. In such a case the prisoner is already represented or himself admits and urges the plea. In the case at bar, however, the petition or complaint against this incompetent alleges that Agnes Naylor is an incompetent; under such circumstances the alleged incompetent is as against this institution the equivalent of an incompetent. So far as this proceeding is concerned, the State institution may not charge that Agnes Naylor is an incompetent and yet deprive her of the protection required by an incompetent. That is the involuntary charge and the court is entitled, as in every other judicial proceeding, to have the person proceeded against duly and properly represented before the court so that both sides will be able to present their cause while the court sits in judgment.

Lastly, it is suggested that since the Legislature has provided that the necessary expenses of the proceeding may be charged against the funds of the institution, waste of the funds of the institution may ensue since a guardian *ad litem* may be appointed when not necessary. In addition to the fact that the court may be trusted to see that no funds may be wasted, it is difficult to see how any expenditure of the funds of the institution could be more necessarily spent than in affording any human being the means to repel such a charge if unfounded. Moreover, it is of great importance to the State that no person shall be supported for the rest of his life at the expense of the State if such support is unwarranted.

As to the appointment of examiners, section 440 limits such appointments to two examiners or an examiner and a psychologist. For that reason I concur that the appointment of the third examiner was inhibited, but not so with the appointment of the attorney as guardian *ad litem*.

It follows that the order appealed from should be reversed in so far as it provided for the appointment of a third examiner and otherwise affirmed.

LEHMAN, Ch. J., LOUGHRAN and LEWIS, JJ., concur with SEARS, J.; FINCH, J., dissents in part in opinion in which RIPPEY and CONWAY, JJ., concur.

Order reversed, etc.