[Civ. No. 4690. Fourth Dist. May 4, 1954.]

JOSEPH B. TRACY, Appellant, v. COUNTY OF·FRESNO,
Respondent.

Meux & Gallagher and Dinkelspiel & Dinkelspiel for Appellant.

Robert M. Wash, County Counsel, and Maurice E. Smith, Assistant County Counsel, for Respondent.

GRIFFIN, J.—This is an action by plaintiff to recover from the county of Fresno attorneys' fees and costs in the sum of $13,413.39, claimed to have been incurred by plaintiff in the successful defense of a grand jury accusation

charging him with willful misconduct and seeking his removal from the office of sheriff of Fresno County.

The question here presented is the construction of section 2001 of the Government Code, as applied to the facts pleaded in a second amended complaint which are, generally speaking, that plaintiff was the sheriff of that county and on April 30, 1952, the grand jury filed an accusation against him charging him with seven counts of willful misconduct. It charged generally that as such sheriff he had knowledge that prostitution and gambling were being practiced in an open, notorious and public manner in certain described parts of the county, and that he willfully, intentionally, and unlawfully failed, refused and neglected to investigate and arrest persons who he knew were practicing prostitution and gambling at said locations, and that he obstructed his deputies from making arrests of such persons. Count 7 charges that the sheriff intentionally appointed a named undersheriff who he knew was and is corrupt and incompetent to perform such duties and accordingly all the acts charged constituted willful misconduct, and the sheriff's removal from office on these grounds was sought. The result of a jury trial was in favor of the accused.

It is then alleged that the district attorney represented the People in said proceeding and that the sheriff requested the county counsel of Fresno County to represent him in defending him against such accusations; that plaintiff acted in good faith and without malice, and that the county counsel "refused" to act and "advised plaintiff to employ counsel" and "that plaintiff thereupon made provision for the employment of private counsel to represent him in defending said accusation"; that he did so and incurred charges for legal fees and costs in the sum of $13,413.39; that on March 18, 1953, plaintiff presented to the Board of Supervisors of Fresno County his claim for said amount and that it was rejected. Judgment is sought in said amount.

Both a general and a special demurrer were filed. The demurrer setting forth the ground that the complaint did not state a cause of action was sustained. The special demurrer was overruled except as to the ground that the amended complaint was ambiguous, and as to that ground it was sustained because it did not appear therefrom how or in what manner plaintiff made provision for the employment of private counsel to represent him. Plaintiff was given 10 days to amend. He failed to do so and judgment was ordered in favor of defendant, from which judgment plaintiff appealed.

Section 2001 of the Government Code now reads:

"SUIT AGAINST STATE, DISTRICT, COUNTY OR CITY OFFICER. (a) [*Duty of State, etc. attorney to act as counsel in defense.*] Whenever any action or proceeding, including a taxpayer's suit, is brought against any officer in his official or individual capacity, or both, of the State or of any district, county, or city

" (1) On account of injuries to persons or property resulting from the dangerous or defective condition of any public property or

" (2) On account of any action taken or work done by him in his official capacity, in good faith and without malice, or

" (b) Whenever any action or proceeding is brought against any officer, in his official or individual capacity, or both, including officers as defined in Article 2, of the State or of any school district, county or municipality on account of injuries to persons or property, alleged to have been received as a result of

" (1) The negligence or carelessness of such officer occurring during the course of his service or employment, or

" (2) The dangerous or defective condition of any public property alleged to be due to the negligence or carelessness of such officer, it is the duty of the attorney for the State, district, county, municipality, or other public or quasi-public corporation, as the case may be, to act as counsel in defense of such suit, unless provision has been made for the employment of other counsel in connection therewith.

"[*Fees and expenses as charge against State, etc.*] In such event the fees, cost and expenses involved in a suit referred to in subdivisions (a) and (b) are a lawful charge against the State, school district, county or municipality, as the case may be."

Counsel for plaintiff argues that when literally interpreted, the accusation of the grand jury was an action or proceeding within the meaning of the first paragraph of that section (citing 1 C.J.S. 937, and Code Civ. Proc., §§ 22, 23); that it was brought against the sheriff on account of "action taken or work done by him in his official capacity"; that such alleged misconduct is based on action and not nonaction, whether it constitutes malfeasance, misfeasance or nonfeasance in office, citing *People* v. *Harby*, 51 Cal.App.2d 759, 767 [125 P.2d 874]; that the actions taken by the sheriff were in good faith and without malice, as established by the result of the verdict; that it was the duty of the county counsel to act as counsel in defense of such suit; that since he refused to act

and advised plaintiff to obtain other counsel in connection therewith, plaintiff was authorized to employ other counsel; that accordingly, under the last paragraph of that section, the fees, costs and expenses involved were lawful charges against the county. The argument is used that public interest is involved in any proceeding brought to remove a public official from office; that faithful public officers should be protected from unfounded accusations based on honest action taken by them in good faith and without malice; that if such public officer be wrongfully charged he should be defended in the public interest, because otherwise a public official, improperly charged, could be hounded out of office by unfounded charges brought against him requiring him to expend enormous funds for counsel fees and court costs in defending himself, and that for this reason section 2001 *supra,* was amended to so provide; that any decrease in the potential liability of an official will increase the willingness of competent people to assume the risk of office and an expenditure to that end is for a public purpose, and that similar statutes so providing have been held constitutional, citing *People* v. *Standard Acc. Ins. Co.,* 42 Cal.App.2d 409, 413 [108 P.2d 923]; 67 C.J.S. 330, § 91; 130 A.L.R. 736.

The legislative history of that section shows that it was based on the Statutes of 1919, chapter 360, as amended by Statutes 1931, chapter 1168, and Statutes 1933, chapter 807. It then applied only to *suits for damages* on account of injury to persons or property resulting from the dangerous or defective condition of any public property on account of any action or work done by him in his official capacity. Under these circumstances it was the duty of the attorney for the county to act as counsel in defense of such suit "unless *lawful* provision has been made for the employment of other counsel in connection therewith." Under such circumstances the "fees and expenses involved . . . are a lawful charge" against the county. In all of these statutes, that portion relating to the duties of counsel now found in subdivision b(2) of the section was not segregated from and was obviously applicable to the entire section. Upon codification of the act in 1943, it was divided into sections and subdivisions, substantially as it is now found. In 1951 [Stats. 1951, chap. 1087, § 1] section 2001 was amended to read as above quoted, to eliminate the words "suit for damages" and substitute the words "any action or proceeding, including a taxpayer's suit."

It does not appear to us that this change clearly indicated a legislative intent to so radically enlarge and change the purpose and scope of the act as to include the costs of defense of a criminal action or of a grand jury accusation, which is criminal in nature, instituted by a body politic in the name of the People of the State of California which, in effect, would call upon the district attorney to prosecute the action and the county counsel to defend the action at the county's ex- ▆▆▆▆ ▆▆▆ It does not appear to us that the Legislature intended by the amendment of that section in 1951 that a mere claimed refusal on the part of the district attorney or county counsel and advice to the county official to obtain private counsel to represent him, is sufficient to authorize the county official to employ such private counsel, at any price agreed upon by such county official, without any previous authorization obtained from the board of supervisors on behalf of the county and against whom the claim must be made, or without any authorization by some officer authorized by it so to act, particularly where the question of the good faith and lack of malice on the part of the county official must be first ascertained by someone before the district attorney or county counsel is authorized to act in any event.

This conclusion is supported by a more careful examination and comparison of the act as it previously existed with its provisions as presently amended. It affirmatively appears that, under the original section, before the county official would be entitled to be represented by the attorney for the county the "suit" must be (1) for damages; (2) on account of "any action taken or work done" by him when done under provisions of the law respecting his office.

In the instant case the first six counts referred to in the accusation do not allege that the action arose out of "any action taken or work done" by the county official but upon inaction in failing to do anything pertaining to the violations charged. However, the seventh cause of action may be construed to be "action taken or work done" by him in appointing as his undersheriff one who was known by him to be incompetent, corrupt, etc. Under the original section nothing was said about the question of good faith and lack of malice. In the present section it is clearly shown that before the county official would be entitled to be represented by the attorney for the county to defend a suit against such official for "any action taken or work done" by him, it would become immediately necessary for such official to show to someone

or to some body (the manner in which and the degree to which it must be shown is not indicated, and the section does not indicate the person or body) that he was free from bad faith and malice. Upon such showing it then becomes the duty of the attorney for the county to act in defense of such suit unless provision has been made (by someone—the section does not indicate) for the employment of other counsel.

The crucial question then arises as to who is to determine the question of good faith and lack of malice, and upon what standard is it to be determined. Is it the board of supervisors, the county attorney, or is it to be ultimately determined in a subsequent court action and must the county official's good faith and lack of malice be established by a preponderance of the evidence or beyond a reasonable doubt? It does not appear from the instant pleadings that the question of the sheriff's good faith and lack of malice was ever considered by any of the parties above mentioned. It is apparent that the question was not presented to the board of supervisors. If it was considered by the county counsel it appears that the determination was against the sheriff on this issue because the county counsel allegedly refused to act and the reason may have been that he was not satisfied that the sheriff acted in good faith and without malice. Plaintiff's contention that the jury's finding that the allegations of the accusation were in favor of the sheriff and were accordingly res judicata on this issue is not supported by the pleadings or the law. The accusation did not plead either that the sheriff acted in good faith or bad faith and/or with or without malice. Malice is not a necessary element in an accusation for willful misconduct in office. (*Coffey* v. *Superior Court,* 147 Cal. 525, 529 [82 P. 75].) See, also, Mechem on Public Officers, section 457, where it is said:

". . . misconduct in office does not necessarily imply corruption or criminal intention. The official doing of a wrongful act, or official neglect to do an act which ought to have been done, will constitute the offense, although there was no corrupt or malicious motive."

The form of verdict returned by the jury was that the accusations were "untrue." In other cases a verdict of "not guilty" has been returned. (*People* v. *Elliott,* 115 Cal.App.2d 410 [252 P.2d 661]; *Matter of Accusation of Shepard,* 161 Cal. 171 [118 P. 513].) In either event the result is the same. The jury, in the trial of the accusation, was, no doubt, instructed as in an ordinary criminal proceeding, that it was

necessary for the People to prove the allegations of the accusation beyond a reasonable doubt, and if these allegations were not so proved, defendant was entitled to a verdict in his favor. (Gov. Code, § 3070.) ▮▮ Accordingly, under this measure of proof it could not be held, as a matter of law, that the verdict of the jury established that defendant was free from malice and bad faith in reference to the acts charged. Under section 2001, *supra,* before the public official would be entitled to be represented by the county counsel or the district attorney, as the case may be, or to make provision for other counsel at the expense of the county, it would be necessary for the county official to first show, to someone or some authority, that the actions taken by him were in "good faith *and* without malice." Just what measure of proof is required is not indicated by the section, but it does seem reasonable that it would take no more than the greater weight of the evidence, and this would be a discretionary matter to be determined by the authority authorized to determine that issue. Accordingly, the finding of the jury in respect to the grand jury accusation was not res judicata of this issue.

The section contemplates that the determination must be made by someone or some authority, other than the county official involved. The implication is that the refusal of the county counsel to act may have been predicated upon his belief that the sheriff had not established that he acted in good faith and without malice. Plaintiff's complaint in the instant action, although it alleges that the sheriff acted in good faith and without malice and that the county counsel "refused" to defend him and "advised plaintiff to employ other counsel," it did not allege that the board of supervisors or county counsel ever made a determination as to whether plaintiff did or did not act in good faith and without malice. As the pleadings now stand, it does not affirmatively appear that the sheriff brought himself within the provisions of section 2001, *supra,* in this respect. A similar observation is made in reference to the subdivision of that section making it the duty of the attorney for the county to act as counsel in defense of such suit "unless provision has been made for the employment of other counsel." The special demurrer pertaining to this allegation was sustained with the right or leave to amend, and plaintiff being unable and unwilling to further plead in this respect, elected to stand on the pleadings. That subdivision contemplates that before attorney's fees and costs may become a charge against the county, someone must make provision for

the employment of such counsel. Just who is authorized under that section to contract for and authorize the employment of other counsel is not clear. In fact, the section is totally lacking in designating that individual or body. We do not believe that it was intended that the county official involved would be the one to determine whether he acted in good faith and without malice or that he was the one authorized by that section to make provision ''for the employment of other counsel'' in any unlimited amount and for his own personal defense of such action, without the sanction or direction of some other authority.

The companion section [2002] of the Government Code provides that in case of a suit for damages against such officer he may *''with the consent of the Board of Supervisors,* have the action referred to the district attorney'' or county counsel, and ''upon the determination of such attorney that the officer performed his official duty *''in good faith and without malice,''* it is the duty of the attorney to appear and defend the officer, in which case the ''costs and expenses involved in such an action . . . are a lawful charge against the funds of the department'' of the county.

This section clearly contemplates first, an authorization by the board of supervisors, and second, a determination by the attorney that the county officer acted in good faith and without malice, before he would be entitled to be represented by the county counsel and at public expense. It appears more reasonable that this was the intention of the Legislature in casting the section here involved and that unless the board of supervisors, which body was authorized to audit and pay the claim in the final analysis, had previously, by contract or otherwise, made provision for the employment of other counsel, the fees, costs, and expenses involved would not be a lawful charge against the county. *Ward* v. *San Diego Sch. Dist.,* 203 Cal. 712 [265 P. 821]; *Sloane* v. *Hammond,* 81 Cal.App. 590 [254 P. 648]; and *Niceley* v. *County of Madera,* 111 Cal.App. 731 [296 P. 306], relied upon by plaintiff, are factually dissimilar.

When the history and purpose of this section are considered, prior to the 1951 amendment there was no authority, at least from this section, for the attorney for the county to represent a county officer in a suit such as a taxpayer's suit, mandamus, injunction, etc., where the county itself might well be the real party in interest, and the very essence and purpose

of the defense be to protect the public interest. Apparently, there was a very real need, in public interest, for an amendment extending the provisions of this section to cover such cases. Such actions or proceedings are to be expected frequently and inherently to arise out of the normal and diligent discharge of a public office. Not only the public agency involved, but the officers who are usually the nominal defendants in such actions should have the right to the services of the attorney for the public agency whose own interests are inextricably involved. However, this does not appear to be true in criminal actions and actions based on grand jury accusations for the removal of such public officials from office. These types of actions are not normal incidents of public office. They are actions instituted and prosecuted by other arms of the public body itself. Whether the cost of a successful defense of a criminal case or grand jury accusation should be a public charge may be debatable, but in any event, the principles involved are wholly different from those involved in the historic scope of the section and such a radical change from the past policy of the state in this regard should not be grafted into the law casually and unintentionally. By the section no machinery is provided for the employment of such other counsel by the official involved, and nothing is said about who is to determine the right of such official to the employment of other counsel, or under what conditions or for what remuneration such other counsel is to be paid. It does not appear that the legislative intent was to permit public officials, on their own initiative, to hire private attorneys and make the cost thereof, without any limitation, a public charge. Such a construction is repugnant to sound principles of public policy.

If plaintiff's construction of this section be correct, it would mean that the Legislature has, at least in a measure, delegated to the official in question, in this case the sheriff, a power over the public purse in his own interest; a power exercised on the county level by the board of supervisors, presumably in the interest of the public as a whole. ██ Whenever a statute relates to the payment of public money, or is an impairment of the prerogatives of government, any doubt should be resolved in favor of the government. This expression is more succinctly stated by the late Mr. Justice Cardozo in *People ex rel. Rand* v. *Craig*, 231 N.Y. 216 [131 N.E. 894], where he said:

"We have felt it our duty, however, when obscurity has

engendered doubt, to fall back upon the fundamental principle that only clear warrant of law will justify the assumption of a power to control the public purse.''

At least as to these matters discussed, the section is not clear, certain and unambiguous, in which case the courts are authorized to determine, if possible, the legislative intent. (Code Civ. Proc., § 1859; *People* v. *Higgins,* 87 Cal.App.2d Supp. 938 [197 P.2d 417]; *Estate of Jacobs,* 61 Cal.App.2d 152 [142 P.2d 454].)

It has been held that a statutory enactment specifically providing for the reimbursement to a public officer of the reasonable expenses actually incurred by him in defending himself against a criminal prosecution based on the charge of official misconduct is within the constitutional power of the Legislature, where it is not forbidden by any express or implied prohibition contained in the fundamental law of the state. (*Kane* v. *McClellan,* 110 App.Div. 44 [96 N.Y.S. 806]; 130 A.L.R. 746.) However, for the reasons expressed, we conclude that the Legislature never intended to extend the provisions of section 2001 of the Government Code to include cases of this nature, under the facts pleaded.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 30, 1954.