2000 SD 39

**STATE of South Dakota, ex rel. Sandy STEFFEN, Plaintiff and Appellant,**

v.

**Jerry PETERSON, the Gregory County Register of Deeds, Defendant and Appellee.**

**No. 21025.**

Supreme Court of South Dakota.

Argued Jan. 11, 2000.

Decided March 15, 2000.

Sandy J. Steffen, Gregory County State's Attorney, Burke, South Dakota, Attorney for plaintiff and appellant.

Richard L. Travis and David A. Pfeifle of May, Johnson, Doyle and Becker, P.C., Sioux Falls, South Dakota, Attorneys for defendant and appellee.

MILLER, Chief Justice

[¶ 1.] County[1] appeals from the circuit court's holding that its register of deeds

---

1. We note this case is titled, "State ex rel. Steffen v. Peterson." The Gregory County State's Attorney, Sandy Steffen, brings this suit on behalf of the Gregory County Board of Commissioners, so the Board should have been named as a party rather than Steffen. Steffen indicated the titling of the case was patterned after a previous removal proceeding, *State ex rel. Hooper v. Tarr,* 62 S.D. 305, 252 N.W. 854 (S.D.1934). However in *Hoo-*

did not commit malfeasance or nonfeasance in the collection, remittance and accounting of fees so as to warrant removal. County also appeals from a judgment against it for disbursements. By notice of review, the register of deeds appeals the trial court's denial of additional fees and costs. We affirm the retainment in office, but modify the full award of disbursements. Further, we affirm the denial of additional fees and costs.

## FACTS

[¶ 2.] Jerry Peterson was elected Gregory County Register of Deeds in 1982, and took office in January 1983. He continues to hold such position, having been re-elected to that position in 1986, 1990, 1994 and 1998. As part of his statutorily prescribed duties, Peterson is responsible for collecting fees charged for recording various documents. Each month, his office is required to transmit a statement to the county auditor showing the amount of fees collected that month. He is also required to submit the fees he collects to the county treasurer on a monthly basis. At the time of the events precipitating this action, both the fee statement and the fees were to be remitted to the other county offices no later than the fifteenth day of the following month.[2]

[¶ 3.] In 1993 and 1995 the South Dakota Department of Legislative Audit, an agency charged with auditing state and local government entities, conducted routine audits of County. In each audit, a random one-month sample was reviewed to ensure the fee statement and the fees were timely remitted to the auditor and treasurer, respectively. Both audit samples revealed that although the fee statement had been timely remitted to the auditor, the fees had not been timely remitted to the treasurer. Each time the legislative auditor made a comment to Peterson that he was to remit the fees by the fifteenth day of the following month. However, neither legislative auditor submitted a formal written recommendation of such action to the county board of commissioners (Board).

[¶ 4.] In July 1997 County was due for another routine audit. In conjunction with that audit, and as the result of a reported shortfall of money and allegations of theft against Peterson, a more thorough examination of the register of deeds' office was performed. During this audit, it was discovered that Peterson had been late in remitting fees to the treasurer each month for the previous thirty months. In addition, it was discovered that Peterson had been receiving a $15 payment from a credit reporting agency (CBC) nearly every month since 1991 for performing lien and judgment searches. Rather than reporting this payment to the auditor and submitting it to the treasurer, Peterson had simply been depositing it into the register of deeds' checking account. Finally, a "potential shortage" of approximately $1,500 was noted by the legislative auditor.

[¶ 5.] The Board met regarding the findings of this audit on August 5 and August 13, 1997. At the August 5th meeting, the Board asked Peterson to explain why he had been late in remitting his fees. He stated the late remittances were due to accounts receivable. At the August 13th meeting, the Board inquired about the shortage of funds and alleged that Peterson had taken it. The Board asked him to replace the money and resign. Peterson responded that he would replace the money, but that he was not a thief and did not intend to resign. The Board also asked about Peterson's failure to report and remit the CBC fees. He admitted that his handling of the CBC payments had been wrong. At a third meeting on an unspecified date, Peterson claims he was asked again about the shortfall and for his resignation. He did not try to provide an ex-

per, the state's attorney was in fact the party bringing the suit, not the Board or any other county entity.

2. The legislature changed this requirement in 1999. See footnote 6, infra.

planation for the shortfall because he was not sure the Board was "really looking for answers anyway." On August 20, 1997, Peterson deposited $1,500 of personal funds into the register of deeds' checking account to "catch up."

[¶ 6.] An even more thorough investigative audit of the register of deeds' office was conducted in September 1997, covering records from 1983 through July 1997. This review revealed that in 140 of the previous 175 months, Peterson had been late in remitting fees to the treasurer. The delinquencies ranged from one to one hundred days late. In addition, a total of $1,060 in CBC payments had been received by Peterson and deposited into the register of deeds' checking account, but never recorded on the fee statement nor submitted to the treasurer. Further, $198.60 [3] of $216,308.60 was found to have been recorded on the fee statement, but never remitted to the treasurer. Other potential defalcations included uncollectable accounts receivable in the amount of $406.90,[4] uncollectable non-sufficient fund (NSF) checks in the amount of $138.95, and miscellaneous expenses in the amount of $76.73 bypassing the appropriate voucher system.

[¶ 7.] On September 23, 1997, Peterson told the Board he was not going to resign. A removal proceeding ensued. Throughout the proceedings, Peterson admitted that he had been late in remitting fees to the treasurer and that he had improperly handled the CBC funds. However, he adamantly denied stealing any money from his office. Peterson attributed the perpetually late remittances to an admitted shortage in the register of deeds' checking account, which was in turn caused by the accounts receivable, uncollectable accounts, supplies purchased, check charges and "things like that." While Peterson conceded that, pursuant to statute, his office

was to collect fees in advance and not allow people to charge, the Minnehaha County Register of Deeds testified on his behalf that such was the common practice. It was also common practice to remit fees from the current month to pay for fees which have been charged for the prior month and which have not yet been paid, a process called "lapping." Peterson's expert witness, a CPA, testified that over a period of time, uncollectable and late accounts receivable could create a "pyramid" effect and cause a shortage in cash flow. Finally, Peterson admitted that his handling of the CBC funds was a "mistake," but that he had always deposited the payments into the register of deeds' checking account and never used any of it for personal gain.

[¶ 8.] In addition to the other allegations, County also asserted at trial that Peterson was improperly conducting political activities while on duty, as evidenced by the fact that he asked two of his deputies to work on political flyers while on county time.

[¶ 9.] At the conclusion of its three-day bench trial, the court ruled that the CBC payments received were not "fees" as defined by statute, that Peterson did not intend to evade the fifteen-day requirement for remitting funds to the treasurer, and that Peterson had not committed malfeasance, nonfeasance, theft or any other crimes in office so as to warrant removal. In a later hearing, the trial court also awarded Peterson $25,677.12 in expenses incurred in his defense.

[¶ 10.] On appeal, County raises two issues:

1. Whether the trial court abused its discretion in failing to remove Peterson for malfeasance or nonfeasance pursuant to SDCL 3-17-6?

2. Did the trial court err in finding that the decision was "favorable" to Pe-

---

3. This amount was originally alleged to be $285.60, but through cross-examination at trial, the amount was reduced to $198.60.

4. This amount was originally claimed to be $515.90, but was reduced to $406.90 through cross-examination at trial.

terson, and abuse its discretion in awarding him total disbursements?

[¶ 11.] By notice of review, Peterson raises the following issue:

3. Whether the trial court erred in denying additional disbursements for attorney fees and expenses?

## DISCUSSION

[¶ 12.] **1. The trial court did not abuse its discretion in failing to remove Peterson from office.**

[¶ 13.] As to removal proceedings under SDCL 3–17–6, this Court has stated:

> It [has been asserted] that, under our statute, if any misconduct, malfeasance, or nonfeasance on the part of the officer charged is found as a fact, then the court where the proceeding is pending has no option whatsoever but is absolutely compellable as a matter of law to enter judgment of immediate ouster from office. With this contention we are unable to agree. The proceeding is at least quasi judicial in nature, and we are convinced that the trial court has some discretion in the matter, and that it is for the trial judge to determine in the first instance, doubtless subject to review in each particular case whether, under all the circumstances, the given misconduct, malfeasance, or nonfeasance found, if any is found, is sufficient to justify or require removal from office.

*State ex rel. Hooper v. Tarr*, 62 S.D. 305, 309, 252 N.W. 854, 856 (S.D.1934). Thus, the standard of review is under an abuse of discretion standard. " 'Abuse of discretion' is discretion not justified by, and clearly against, reason and evidence." *Nelson v. Nelson Cattle Co.*, 513 N.W.2d

900, 906 (S.D.1994) (citing *Dacy v. Gors*, 471 N.W.2d 576, 580 (S.D.1991)). "The test is whether a judicial mind, in view of the law and circumstances, could reasonably have reached the [same] conclusion." *Id.*

[¶ 14.] The trial court found that although Peterson's failure to timely remit the fees "certainly is wrong," it concluded that his misconduct did not rise to the level sufficient to warrant removal. However, the court did order Peterson to remit $1,060, (the amount of the unreported and unremitted CBC fees), and $198.60, (the shortfall between fees reported and fees remitted), to the treasurer. These amounts were in addition to the $1,500 of personal funds Peterson had previously deposited into the register of deeds' checking account.

[¶ 15.] In this appeal, County argues that in light of all this evidence, the trial judge abused his discretion in not removing Peterson for malfeasance or nonfeasance. It further argues that the trial court improperly delegated the decision of whether to oust Peterson to the voters in an upcoming primary election in which Peterson was seeking re-election to his position. We disagree.

[¶ 16.] SDCL 3–17–6 provides a mechanism for removing an elected official prior to the end of his or her term: "Any officer of any local unit of government may be charged, tried, and removed from office for misconduct, malfeasance, nonfeasance, crimes in office, drunkenness, gross incompetency, corruption, theft, oppression, or gross partiality."

[¶ 17.] County asserts that Peterson committed malfeasance and/or nonfeasance because he failed to collect fees in advance pursuant to SDCL 7–9–1,[5] and because he

---

5. Prior to being amended in 1999, SDCL 7–9–1 provided in part:

The register of deeds shall keep full and true records in proper books, of all deeds, mortgages, and other instruments authorized by law to be recorded in the register of deeds' office, and records of all chattel mortgages, bills of sale, conditional sale contracts, and other instruments authorized by law to be filed in the register of deeds' office, if the person offering any of such instruments pays in advance the fee required by law for recording or filing the same.

failed to report and remit fees pursuant to SDCL 7–9–17.[6] According to County, such failure constitutes an unlawful act, theft, under SDCL 7–9–18.[7]

[¶ 18.] In *Tarr*, this Court had the only other occasion to consider the removal provision of SDCL 3–17–6. However, the merits of the case were not reached because the appeal was dismissed on other grounds.[8] *Tarr*, 62 S.D. at 310, 252 N.W. at 857. Thus, we must look elsewhere for guidance.

[¶ 19.] "Removal of public officers from office is a drastic remedy, ... and statutory provisions prescribing the grounds for removal are strictly construed." *Kemp v. Boyd*, 166 W.Va. 471, 275 S.E.2d 297, 301 (W.Va.1981). *See also*, 4 Eugene McQuillin, Municipal Corporations, § 12.229 (3rdEd 1992) ("Strict construction of laws authorizing removal is the rule."). The remedy provided by removal statutes is heroic in nature and relatively drastic where the usual method of removing officeholders is by resort to the ballot. *State v. Bartz*, 224 N.W.2d 632, 638 (Iowa 1974) (citation omitted). Evidence in a removal action must be "clear, satisfactory and convincing." *Id. See also, Kemp*, 275 S.E.2d at 301 (To warrant removal of an official, clear and convincing evidence is necessary.).

[¶ 20.] "To constitute malfeasance or nonfeasance, conduct must 'affect the performance of official duties and must relate to something of a substantial nature directly affecting the rights and interests of the public.'" *Claude v. Collins*, 518 N.W.2d 836, 842 (Minn.1994) (quoting *Ja-*

---

The 1999 amendment deleted the "in advance" phrase.

**6.** Prior to being amended in 1999, SDCL 7–9–17 provided in pertinent part:

> The register of deeds shall, within fifteen days after the expiration of each calendar month and also at the end of his term of office, file with the county auditor a statement under oath showing the fees ... which he has charged or received as such officer since the date of his last report or the beginning of his term of office and shall, also within such fifteen days, deposit with the county treasurer the total amount of such fees which sum so deposited shall be placed to the credit of the general fund.

SDCL 7–9–17 was completely re-written in 1999 and now provides:

> Within the time frame established by the county commission, the register of deeds shall deposit with the county treasurer the total amount of fees and other collections received. Unless otherwise required, all fees and other collections shall be placed to the credit of the general fund. At the discretion of the register of deeds, fees and other transactions may be charged on account but shall be collected by the end of the following month. The register of deeds shall maintain a detailed record of any accounts receivable.

**7.** SDCL 7–9–18 states:

> Any register of deeds who shall neglect or omit to charge or collect the fees allowed by law for services rendered by him, or shall fail to keep a record of the same, or to make a correct statement thereof to the county auditor, or to pay over such fees to the county treasurer as provided in § 7–9–17, with intent to evade the provisions of said section, shall be guilty of theft.

**8.** In *Tarr*, removal proceedings were initiated against Tarr, a Gregory County Commissioner, by the Gregory County State's Attorney. The proceedings were dismissed a short time later by stipulation between the parties. However, an acting commissioner subsequently alleged that the stipulated dismissal was entered into with ulterior motives. According to the acting commissioner, Tarr and the State's Attorney were both in favor of building a new county courthouse, therefore the State's Attorney dismissed the action against Tarr so that he could be reinstated and vote for its construction. Upon learning of these allegations, the trial court entered an order reinstating the action against Tarr and replacing the State's Attorney with a Special State's Attorney. The court then conducted removal proceedings and found that, although Tarr was guilty of misconduct and nonfeasance, his actions were not so egregious as to warrant removal from office. The Special State's Attorney appealed the decision, and this Court held the trial court did not have any authority to summarily remove the State's Attorney from his office and appoint a Special State's Attorney. Thus, all acts of the Special State's Attorney were void and of no effect, and the Court dismissed the appeal.

*cobsen v. Nagel,* 255 Minn. 300, 96 N.W.2d 569, 573 (Minn.1959) (citation omitted)). Malfeasance is "not susceptible of an exact definition but it 'has reference to evil conduct or an illegal deed, the doing of that which one ought not to do, the performance of an act by an officer in his official capacity that is wholly illegal and wrongful.' " *Id.*[9] Nonfeasance is the " 'neglect or refusal, without sufficient excuse, to do that which is the officer's legal duty to do.' " *Id.*[10]

[¶ 21.] A recurring factor in removal cases is the intent of the actor. In *Bartz,* county supervisors were removed because they accepted gifts from contractors with whom they dealt in their official capacities, maintained "slush" funds from sales of county equipment to purchase tools and miscellaneous supplies for the county shops, and submitted exorbitant unsubstantiated mileage reimbursement requests. *Bartz,* 224 N.W.2d at 634–37. In *Claude,* stating that ignorance or inexperience is not a sufficient excuse, the Minnesota Supreme Court removed three city council officers from office for intentionally violating the requirements of an open meeting law on at least three separate occasions. *Claude,* 518 N.W.2d at 843. In contrast, in *Kemp,* a county commissioner was not removed from office, even though he left a county commission meeting for six hours to coach a basketball game and had erroneously received mileage reimbursement from the county. *Kemp,* 275 S.E.2d at 302–07. Instead of removal from office, the commissioner was directed to repay the sums which he obtained under his erroneous interpretation of the law, and was admonished to place his duties as a public official above his coaching obligations. *Id.* A survey of these cases reveals that where the official's intent was to evade or otherwise circumscribe the law, malfeasance or nonfeasance was found. In

contrast, where there was no such intent, no malfeasance or nonfeasance existed. In *State v. Manning,* 220 Iowa 525, 259 N.W. 213, 215–16 (1935), the Iowa Supreme Court stated:

> [A]cts, whether of omission or commission, in order to constitute grounds for removal must have been done knowingly, willfully and with an evil or corrupt motive and purpose ... The primary purpose of the law ... is to protect the public interest.... While we cannot place our stamp of approval upon the manner and method pursued by these defendants in the management of the affairs of the municipality, and are in no way excusing acts and conduct which amount to actual violation of statutory laws, yet we can discern no purpose, on the part of said officials in what they did, to harm, or which was inimical to the interests of such city. No corrupt or evil design or purpose is manifest from the evidence[.]

Similarly, SDCL 7–9–18, *supra,* requires an intent to evade the provisions of SDCL 7–9–17 in order to constitute theft.

[¶ 22.] Upon reviewing the record in the instant case, we cannot hold that the trial court abused its discretion in failing to remove Peterson from office. While Peterson admittedly failed to comply with the strict letter of the law, he did not do so with a corrupt or evil design or purpose. Although he charged fees rather than collecting them in advance, his was not the only register of deeds' office in the state to do so. It was this practice of charging, and its resulting "pyramiding" effect, that caused the shortage of funds for Peterson. The shortage of funds in turn resulted in the late remittance of fees. Peterson also testified that his handling of the CBC funds was a "mistake," and that he simply

---

**9.** Black's Law Dictionary, defines malfeasance as: "A wrongful or unlawful act; esp., wrongdoing or misconduct by a public official." Black's Law Dictionary, 968 (7thEd. 1999).

**10.** Black's Law Dictionary defines nonfeasance as: "The failure to act when a duty to act existed." Black's Law Dictionary, 1076 (7thEd. 1999).

began handling the payments improperly and continued to do so until the practice was discovered in 1997. Perhaps part of Peterson's confusion about how to handle the CBC payments stems from the fact that, as the trial court found, the payments do not fit into any of the categories of "fees" described at SDCL 7–9–15.[11] In addition, the $198.60 that Peterson reported but did not remit is small in comparison to the total amount of fees handled during that fourteen-year period, $216,308.60.

[¶ 23.] As stated by the Iowa Supreme Court in *State ex rel. Crowder v. Smith*, 232 Iowa 254, 4 N.W.2d 267, 270 (1942): "[The defendant] may have made some mistakes, or, at times, in the opinions of others, may have exercised poor judgment; but any officer may make mistakes and still be absolutely honest. An officer may even be incompetent and still be honest and the soul of integrity." It further concluded, "There is no man in official position so letter perfect in the law that he does not at some point by act or omission or misconstruction of the law, though with perfect integrity of motive, fall short of the strict statutory measure of his official duty." *Id.* 4 N.W.2d at 271.

[¶ 24.] Additionally, we find the trial court did not abdicate its authority to remove an elected official. SDCL 3–17–7 provides in pertinent part that "it shall be the duty of judge of the circuit court to ... hold a special term thereof, at which term the issues in such proceeding shall be heard and determined by the court." County argues that the court "[threw] the removal decision over to the voters of Gregory County" when it made the following remark (after stating that there was an adequate explanation for the late remittal of fees and that such explanation was sufficient to justify Peterson's non-removal) in its bench ruling:

> And I say that mindful of the fact that this is an election year and that there will be an election on June 2nd and that the people of Gregory County can decide whether or not Mr. Peterson's practice warrants his removal. And if he survives the primary they can decide again in the fall. And if he doesn't then the people will have spoken. And I believe it's for them to do that on that issue.

[¶ 25.] Peterson argues that such comment was only acknowledgement by the court that its decision would be short-lived since there was an upcoming election and

11. SDCL 7–9–15 states:

The register of deeds shall charge and receive the following fees:

(1) For recording deeds, mortgages, and all other instruments not specifically provided for in this section or this code, the sum of ten dollars for the first page and two dollars for each additional page or fraction thereof. Each rider or addendum shall be considered as an additional page;

(2) For a certified copy of any instrument of record, including certificate and official seal, two dollars plus twenty cents for each page after five pages, and for an uncertified copy, one dollar, plus twenty cents for each page after five pages. The board of county commissioners by resolution shall establish the fees charged for duplicate microfilm. In addition to the fee for a certified copy of the record of any birth, there is an additional charge of two dollars for each copy requested, which shall be submitted on a monthly basis to the state treasurer to be deposited in the children's trust fund;

(3) For filing and indexing a bill of sale, seed grain lien, or thresher's lien, the sum of ten dollars. No fee may be charged for filing any satisfaction or termination of any instrument as prescribed in this subdivision;

(4) For recording oil, gas, and mineral leases, and other recorded documents relating to mineral or oil and gas lease exploration and development, six dollars per page; and

(5) Notwithstanding the provisions of subdivision (2) of this section, the board of county commissioners shall fix by resolution the fees to be paid by licensed abstracters of the county or by any person who has passed the written examination established by the Abstracters' Board of Examiners pursuant to § 36–13–11 for uncertified copies of recorded instruments, which fee may not exceed the actual cost to the county for providing such copies. The register of deeds may not charge a fee for discharging or canceling any personal property lien.

the voters could unseat Peterson if they saw fit. We agree.

[¶ 26.] Our treatment of extraneous material not incorporated into the trial court's findings of fact and conclusions of law is well settled:

"Any expression of opinion or views by the trial judge extraneous to his decision in the manner and form contemplated by law is of no binding force or effect as a matter of law either upon the trial judge himself or any one else. *Cf. Agard v. Menagh,* 60 S.D. 262, 244 N.W. 379; *Klundt v. Hemenway,* 60 S.D. 248, 244 N.W. 377. Such expressions by the trial judge are, of course helpful and indeed almost necessary in advising counsel as to the views of the court and for the information of counsel in drafting findings and conclusions for presentation to the court. But such expression of opinion constitutes no proper part of the record on appeal, whether announced in the form of an oral statement in open court transcribed by the reporter or in the form of a memorandum or letter addressed to counsel. [cites omitted]."

*Mellema v. Mellema,* 407 N.W.2d 827, 829 (S.D.1987) (quoting *Western Bldg. Co. v. J.C. Penney Co.,* 60 S.D. 630, 636–637, 245 N.W. 909, 911–912 (1932)). "Thus, we ignore the trial court's oral pronouncements and limit our review to the written findings and conclusions." *Id.* (citing *Jones v. Jones,* 334 N.W.2d 492 (S.D.1983); *Hitzel v. Clark,* 334 N.W.2d 37 (S.D.1983)).

[¶ 27.] The comments made by the judge in his bench ruling were not incorporated into the findings of fact and conclusions of law, therefore they are superfluous and not reviewable.

[¶ 28.] **2. The trial court abused its discretion in awarding Peterson total disbursements, because the decision was not entirely "favorable" to him.**

[¶ 29.] The trial court awarded attorney fees and disbursements in the amount of $25,677.12 to Peterson. The issue is whether the outcome was "favorable" to Peterson, thereby entitling him to disbursements. County argues the decision was not favorable, because Peterson likely would not have been able to retain his position had he not repaid over $2,700 from his personal funds. Peterson asserts, however, the outcome was favorable because he was able to retain his position.

[¶ 30.] "A party filing a motion for an award of attorney's fees bears the burden of proving by a preponderance of evidence its entitlement to such an award." *Hartman v. Wood,* 436 N.W.2d 854, 857 (S.D.1989) (citing *Bd. of County Comm'rs of County of Jefferson v. Auslaender,* 745 P.2d 999, 1001 (Colo.1987)). Attorney fees are not recoverable by either party unless such action is specifically authorized by statute. *Michlitsch,* 1999 SD 69, ¶ 17, 594 N.W.2d at 734; *Hartman,* 436 N.W.2d at 857. Further, where an expenditure of public funds is involved, a statute authorizing such expenditure will be strictly construed. *Appeal of Presentation Sisters, Inc.,* 471 N.W.2d 169, 174 (S.D.1991); *Sioux Valley Hosp. Ass'n v. Davison County,* 298 N.W.2d 85 (S.D.1980) (statute authorizing payment of medical expenses for indigent person strictly construed). *See also CADO Business Systems of Ohio, Inc. v. Bd. of Educ. of Cleveland City School Dist.,* 8 Ohio App.3d 385, 457 N.E.2d 939, 944 (1983) (payment to equipment vendor denied where directives of statute authorizing expenditure were not strictly followed); *Tracy v. Fresno County,* 125 Cal.App.2d 52, 270 P.2d 57, 63 (1954) (payment of attorney fees to sheriff in defense of criminal prosecution denied because reimbursement statute only covered normal incidents of public office, not criminal actions); and *In re Naylor,* 284 N.Y. 188, 30 N.E.2d 468, 469 (1940) (payment to third medical examiner denied, where statute only authorized payment to two such examiners).

[¶ 31.] Specific statutory authorization for an award of attorney fees can be found at SDCL 3–17–10, which provides:

> If the final determination of such proceeding be favorable to such accused officer, he shall be allowed the reasonable and necessary expenses he has incurred in his defense, including a reasonable attorney fee, to be fixed by the court or judge. Such expenses shall be paid by the county, if he be a county officer; by the township, if he be a township officer; and by the municipality if he be an officer of such municipality.

[¶ 32.] Other courts deciding whether an outcome was "favorable" or "successful," or whether a party "prevailed" so as be to entitled to an award of attorney fees, have reached various conclusions. In *Maglio v. City of New York*, 15 A.D.2d 197, 223 N.Y.S.2d 60 (N.Y.App.Div.1961), *aff'd*, 12 N.Y.2d 939, 238 N.Y.S.2d 515, 188 N.E.2d 789 (1963), a New York appellate court held that where a magistrate judge was not removed from office, but was instead only judicially censured, the magistrate could not be deemed a "successful party," so as to be reimbursed for attorney's fees. In denying the magistrate's claim, the court stated:

> The fact that [the magistrate] was spared the extreme penalty of removal does not detract from the gravity and effect of the finding by this court that he was guilty of conduct inconsistent with the fair administration of justice. Only by means of a play on words can it be said that [the magistrate] was successful.

*Maglio*, 223 N.Y.S.2d at 63.

[¶ 33.] The dissenting opinion in *Maglio*, however, emphasized that the removal of the magistrate was the "aim and purpose of the proceeding," and that the "aim and purpose failed." *Id.* at 64. "[The magistrate], therefore, was a 'successful party' in a proceeding 'to remove him from office.' ... Since the proceeding here failed of its single intended purpose, to wit: [the magistrate's] removal, the conclusion unavoidably follows that he is the 'successful party' and is entitled to recover his expenses...." *Id.*

[¶ 34.] In *Heath v. County of Aiken*, 302 S.C. 178, 394 S.E.2d 709 (S.C.1990), the South Carolina Supreme Court upheld the award of attorney fees to a sheriff who had brought a partially successful declaratory judgment action against the county. In this regard the court stated:

> Contrary to appellants' assertion, a party need not be successful as to all issues in order to be found to be a prevailing party. A prevailing party has been defined as:
>
>> [t]he one who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of the original contention [and] is the one in whose favor the decision or verdict is rendered and judgment entered.

*Heath*, 394 S.E.2d at 711 (quoting *Buza v. Columbia Lumber Co.*, 395 P.2d 511, 514 (Alaska 1964)).

[¶ 35.] Reimbursement of attorney fees by a state official who successfully defended himself against a removal proceeding was also upheld by the Supreme Court of New Hampshire. *King v. Thomson*, 119 N.H. 219, 400 A.2d 1169 (1979). In *King* the court reasoned that the state manifested an equally strong interest in maintaining a public official as it did in removing such a person, therefore by defending himself from removal, the official was protecting an important state interest, and the state was obligated to pay his counsel fees. *Id.* at 1171.

[¶ 36.] On a more general level, the United States Supreme Court has stated, "[A] Court first must determine if the applicant is a 'prevailing party' by evaluating the degree of success obtained." *Commissioner, INS v. Jean*, 496 U.S. 154, 160, 110 S.Ct. 2316, 2320, 110 L.Ed.2d 134, 143 (1990).

[¶ 37.] Here, although Peterson was able to retain his position, he was not completely exonerated of all wrongdoing, and through the removal proceeding, County was successful in bringing about restitution and a change in his behavior. Peterson admitted his failure to timely remit funds to the treasurer, as well as the improper accounting of the CBC payments. He agreed to remit fees on a timely basis in the future, and he agreed to properly account for the CBC payments. Further, Peterson was ordered to repay over $1,200,[12] in addition to the $1,500 of personal funds he had already repaid.

[¶ 38.] Peterson's actions are not the type of conduct SDCL 3–17–10 rewards. Rather, the statute is intended to reimburse public officials who are innocent of wrongdoing in office. We think the term "favorable" in SDCL 3–17–10 must be strictly construed to mean "exculpation and not some lesser degree of success." *Kerwick v. City of Trenton*, 184 N.J.Super. 235, 445 A.2d 482, 484 (Law Div.1982). *See generally*, Kimberly J. Winbush, Annotation, *Payment of Attorneys' Services in Defending Action Brought Against Officials Individually as Within Power or Obligationof Public Body*, 47 A.L.R.5th 553 (1997).

[¶ 39.] The determination in this case was favorable to Peterson in the sense that he managed to retain his position. However, it was unfavorable to him because he was required to repay in excess of $2,700 in personal funds to the county, and he was admonished to change certain aspects of his office procedure. In view of the circumstances of this case, we hold that an equal apportionment of Peterson's expenses is reasonable and appropriate, since the determination was not totally favorable to either party. SDCL 3–17–10. Thus,

the trial court abused its discretion in awarding full reimbursement of disbursements to Peterson. The case is remanded to the trial court with directions that it modify its order to award Peterson 50% of his disbursements.

[¶ 40.] **3. The trial court did not err in denying additional disbursements for attorney fees and expenses.**

[¶ 41.] The trial court denied Peterson's request for additional attorney fees and expenses, writing, "[w]ith regard to the request for additional attorney fees, I will not award attorney fees for obtaining attorney fees." By notice of review, Peterson argues that SDCL 3–17–10 mandates the payment of attorney fees and expenses, and the additional attorney fees and expenses were incurred only because County refused to acknowledge such directive. Therefore he asserts he is entitled to reimbursement for these expenses. In contrast, County simply asserts SDCL 3–17–10 does not allow the award of attorney fees for pursuing an award of attorney fees. We agree.

[¶ 42.] Actions for attorney fees incurred in obtaining attorney fees for an underlying action, so-called "fees-for-fees" litigation, have been decided along two lines. One line of reasoning holds fees-for-fees litigation as part of the underlying substantive issue that is being litigated. Under this rationale, statutes such as SDCL 3–17–10 were enacted to make a vindicated defendant whole, therefore all related fees are authorized as part of the underlying claim. *See, e.g., Commissioner, INS v. Jean*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); *Am. Fed'n of Gov't Employees, AFL–CIO Local 3882 v. Fed. Labor Relations Auth.*, 994 F.2d 20

---

12. It is noteworthy, however, that the trial court did not specifically order Peterson to repay this money as a condition of retaining his position. It stated in its letter opinion awarding disbursements:

> Steffen points out that several allegations in the pleadings were proven to be true.

For example, Peterson was late with his payments and he had to remit $1060 for CBC fees and $198.60 that he was short on his fees. This is not an indication that the state won. Peterson would be obligated to pay these sums whether the court ordered it or not.

(D.C.Cir.1993); and *Salmon v. Davis County*, 916 P.2d 890 (Utah 1996). Following this line of reasoning, Peterson would be entitled to fees-for-fees, because such litigation was pursued as part of the larger effort to vindicate him and make him whole.

[¶ 43.] The other line of reasoning follows the traditional American rule that attorney fees cannot be recovered by a prevailing party absent express statutory or contractual authorization. This rationale characterizes fees-for-fees litigation as an issue separate and distinct from the underlying action. Because such fees would only benefit the individual litigant and are not sought in furtherance of the underlying claim or for the benefit of the public in general, they would be barred under statutes such as SDCL 3–17–10, which only provide for expenses incurred in defense of the substantive issue. *See, e.g., Barker v. Utah Pub. Serv. Comm'n*, 970 P.2d 702, 713 (Utah 1998), *Salmon*, 916 P.2d at 899–900 (Russon, J., dissenting); *Thornber v. City of Fort Walton Beach*, 622 So.2d 570 (Fla.Dist.Ct.App.1993); and *Van Horn v. City of Trenton*, 80 N.J. 528, 404 A.2d 615 (N.J.1979). Under this approach, Peterson's fees-for-fees would not be authorized by SDCL 3–17–10, because such litigation was not pursued in defense of the removal proceeding and because such an award is not specifically authorized by statute or contract.

[¶ 44.] Although both arguments are somewhat persuasive, we hereby adopt the latter line of reasoning and hold that Peterson is not entitled to fees-for-fees. He was not completely vindicated as a result of the removal proceeding, and SDCL 3–17–10 does not specifically provide for the payment of fees-for-fees.

[¶ 45.] We affirm in part, reverse and remand in part, and award no appellate attorney fees.

[¶ 46.] AMUNDSON and GILBERTSON, Justices, concur.

[¶ 47.] SABERS and KONENKAMP, Justices, concur in part and concur in result in part.

KONENKAMP, Justice (concurring in part and concurring in result in part).

[¶ 48.] I concur in the majority opinion on Issues 1 and 2, and on Issue 3, I join with Justice Sabers on points 1 and 2 of his special writing.

SABERS, Justice (concurring in part and concurring in result in part).

[¶ 49.] I concur in all respects except that I concur in result on Issue 3 for four reasons:

1. First, since we are affirming the trial court in denying additional disbursements (for attorney fees and expenses), it is not necessary to decide at this time whether or not they are permitted under the statute.

2. Second, since we decide to deny additional disbursements because the result was not entirely favorable to Peterson, any interpretation of the statute (SDCL 3–17–10) is not necessary to the holding, and therefore, simply *dicta*.

3. Third, it is a mistake to reach that unnecessary interpretation now for an even more important reason. It is wrong.

SDCL 3–17–10 is specific statutory authorization for an award of trial and appellate attorney fees. It provides in part: "If the *final* determination of such proceeding be favorable to such accused officer, he shall be allowed the reasonable and necessary expenses he has incurred in his defense, including a reasonable attorney fee, to be fixed by the court or judge[.]" (emphasis added). Obviously, the *final* determination is at the appellate level in the Supreme Court, not the trial court.

4. Fourth, it would be a mistake to have an incorrect, unnecessary interpretation on the books in this state because it

would enable the County Commissioners to punish a county officer in circumstances like this, even though the initial determination, or trial court result, was entirely favorable to him. They could do this by forcing him to pay the cost and expenses of an appeal without personal costs to themselves. We should not provide them this one-sided advantage, especially when the Legislature intended otherwise.

[¶ 50.] KONENKAMP, Justice, joins this special writing on points 1 and 2.